[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 581 
The plaintiffs, stockholders in the Franklin Capital Corporation, filed their complaint in a class action to declare void and to enjoin the execution of certain proposed transactions hereinafter outlined between the Franklin Capital Corporation, Franklin Mortgage and Title Insurance Company and Franklin Washington Trust Company. The defendants have filed answers and depositions have been taken. Additionally, a petition has been filed on behalf of seventy other stockholders of Franklin Capital Corporation to intervene in the suit on the basis of the pleadings and other papers filed and submitted by the plaintiffs. While the order allowing intervention has not formally been entered, the matter *Page 582 
will be treated as though it had been. The material facts are not in substantial dispute.
In the interest of brevity, the Franklin Capital Corporation will hereinafter be referred to as the Capital Company; the Franklin Mortgage and Title Insurance Company, as the Mortgage Company; and the Franklin Washington Trust Company, as the Bank.
The Capital Company owns all of the stock of the Mortgage Company and the directors of both companies are identical. The Capital Company owns 63 per cent of the common voting stock of the Bank and two directors of the former are on the board of the latter. Clifford F. MacEvoy, individually and through other corporations, is the largest stockholder and is the moving spirit of the three corporations. He is president of the Capital Company and chairman of the Boards of Directors of the Mortgage Company and of the Bank. The two plaintiffs are the holders of 22,000 shares of stock of the Capital Company; they own no stock in the Bank. The intervenors are also stockholders of the Capital Company.
The business of the Mortgage Company is thus described by Mr. MacEvoy in a letter dated September 23, 1949, addressed to the stockholders of the Capital Company: "The insurance of titles on real estate and the representation of large life insurance companies and other institutional investors in mortgage loans. Its services in the latter field include the representation of these companies in the finding of mortgages, their placement, and, upon their placement, the servicing of such mortgages on behalf of the investors." The assets of the Mortgage Company are in excess of $750,000, consisting of cash of approximately $350,000, $300,000 in first mortgage loans and United States Government bonds, and the balance in real estate and personal property. As of November 1, 1949, after providing for the payment of liabilities including outstanding capital stock of $300,000, the Company had an earned surplus of approximately $190,000 and paid-in surplus of $100,000. The Company has been operating at a profit. The mortgages which it services for institutional investors amount in the aggregate to approximately $16,000,000, *Page 583 
for which it receives servicing fees ranging from 1/2 to 1 per cent. Nevertheless, no value is placed on these servicing contracts.
It is not necessary to go into detail regarding the assets of the Bank. For the purpose of this opinion, it will suffice to state that the Bank has outstanding an issue of 62,500 shares of $8 par value 3 per cent Preferred Stock, totalling $500,000. All but seven shares of the issue are held by the Reconstruction Finance Corporation. Annual dividends amount to $15,000. The Bank has accumulated a sum of $106,503.25 as a retirement fund for the Preferred Stock. The outstanding common capital stock of the Bank consists of 48,000 shares of $8 par value, of which the Capital Company owns 30,037. No dividends have been, nor can be, paid upon the common stock while the Preferred Stock held by the Reconstruction Finance Corporation is outstanding. Mr. MacEvoy testified: "The Bank, regardless of how much money it was making within reason couldn't pay any dividends because there was a provision that if you had outstanding stock owed to the R.F.C. that you couldn't pay dividends."
In his letter to stockholders of the Capital Company, Mr. MacEvoy further stated that the Bank "has been assisting the Mortgage Company in its mortgage business in that it has been temporarily taking and placing the mortgages against written agreements for purchase by the large life insurance companies and other institutional investors" and "in addition and for its own account, has built up a substantial investment in mortgages which it itself services. As can be seen from the above, there is a great duplication of activity by each of the companies."
The defendants desired to accomplish the following objects: to discontinue the title insurance business of the Mortgage Company, to retire the Preferred Stock issue of the Bank, to create "a unified institution with resulting savings and efficiency in the conduct of the business by a single entity which is now being carried on separately by each of the companies," and "to enable the Bank to commence * * * the payment of dividends to its (Common) stockholders at a rate approximating *Page 584 
5% on the par value of the old and new issue." To attain these objectives, the directors adopted the following plan: — The Mortgage Company would transfer its title insurance plant and business to another title company and pay the sum of $10,000, for which the title company would assume the contingent liability of the Mortgage Company under its outstanding title policies; the Mortgage Company to be dissolved and its assets consisting of the mortgages and bonds to be purchased by the Bank at par. The Bank would take over the servicing of the mortgage portfolios without any payment therefor. The key personnel of the Mortgage Company would be employed by the Bank. The Bank would amend its certificate of incorporation to provide for the issuance of 72,000 shares of additional common stock at a par value of $8 per share, to be offered to its stockholders in the ratio of 1 1/2 shares for each existing share. The Bank contemplated the sale of the new issue of stock in order to obtain cash with which to retire the Preferred Stock held by the Reconstruction Finance Corporation and to acquire the assets of the Mortgage Company. The Capital Company agreed to exercise its full subscription right to purchase 40,055 shares of the new issue and, further, to purchase all shares not acquired by the other stockholders. For the purchase, the Capital Company proposed to use the cash of the Mortgage Company which, as sole stockholder, it would have obtained in the "dissolution" of the Mortgage Company. In short, at the conclusion of these involved transactions, all of the assets, including the cash, of the Mortgage Company would have been acquired by the Bank and the Capital Company would have obtained merely additional common stock of the Bank. The arrangement was considered advantageous since it would enable the Bank to pay a dividend of 5 per cent on the old and new common stock.
At the meeting of the stockholders of the Capital Company called to approve the proposals, the plaintiff, Carl Bresnick, objected that the plan would benefit the holders of 37 per cent of the stock of the Bank to the detriment of the stockholders of the Capital Company; that the plan was in fact a "merger" of the two companies and not a "dissolution" of the Mortgage *Page 585 
Company; and he offered to purchase the assets of the Mortgage Company for $50,000 more than the Bank had agreed to pay. His financial ability to carry out his offer was not, and is not, questioned. However, his offer was rejected. In spite of the plaintiff's objections, the defendants proposed to complete their arrangements; and, thereupon, the complaint herein was filed.
Two questions are raised: (1) whether the arrangement is voidable and (2) whether the plaintiffs may attack it.
The plaintiffs argue that the Mortgage Company is not to be dissolved, but in fact merged with the Bank, and that such a merger is illegal. The power of domestic corporations to consolidate and merge exists only by plain legislative enactment.Colgate v. United States Leather Co., 75 N.J. Eq. 229 (E. A. 1908). The provision for merger and consolidation of corporations under the General Corporation Act expressly excludes insurance or banking companies. R.S. 14:12-1. There is now no legislative authority for the merger or consolidation of a title company and a trust company. There was such authority underR.S. 17:4-96, but this was repealed by P.L. 1948, c. 67, § 336, p. 413. It may well be that because of the absence of statutory authority for the merger or consolidation of a title insurance company with a trust company, the directors conceived the foregoing plan for the separation of the title insurance part of the Mortgage Company's business, the dissolution of the Mortgage Company and the transfer of its assets to the Bank via the Capital Company in consideration of the issuance of new common stock of the Bank to the Capital Company. Under whatever name the plan be pursued, the proposed transactions, if carried out, would result in the death of the Mortgage Company and the acquisition and absorption by the Bank of all the assets, business and employees of the Mortgage, with the exception of the title plant, in consideration of the issuance of Common stock by the Bank. In Riker Son Co. v. United Drug Co., 79 N.J. Eq. 580
(E. A. 1911), Chief Justice Gummere said: "The scheme, in the carrying out of which the dissolution of the company is a proposed step, is a fraud upon *Page 586 
the statute (the word is used in a legal, not a moral, sense); and every act done in furtherance thereof, no matter whether it be legal, standing alone, or not, is equally a fraud upon the statute."
It is generally settled that transactions between corporations having interlocking directors or other officers, are not, according to the weight of authority, void for that reason, but merely voidable. Such transactions are subject to the closest scrutiny of the Court and will be set aside if the transaction appears to be unjust and unfair. Robotham v. PrudentialInsurance Co., 64 N.J. Eq. 673 (Ch. 1903); Pierce v. OldDominion, etc., Smelting Co., 67 N.J. Eq. 399 (Ch. 1904);Id., 72 N.J. Eq. 595 (Ch. 1907); affirmed, 74 N.J. Eq. 450
(E. A. 1908); Solimine v. Hollander, 128 N.J. Eq. 228
(Ch. 1940), at page 275.
In the Robotham case, supra, Vice-Chancellor Stevenson declared: "Common directors abound and common directors are better than `dummies.' Whether a transaction between two corporations has been accomplished or remains executory, I incline strongly to believe that the safe rule in most cases in the end will be found to be that the presence of a director or directors on both sides of the transaction under investigation does not give the dissenting stockholder an arbitrary right to an injunction, but may give him a most ample right to subject the transaction to the scrutiny of the Court, and may cast upon the corporations or directors concerned the burden of disclosing and justifying the transaction."
The Court will not prevent two corporations having free relations, a third corporation holding a majority of the stock of each of them, from contracting with each other until it appears that the proposed contract is inequitable and unfair. Pierce v.Old Dominion, etc., Smelting Co., supra.
"If the contract or other transaction is entered into by the same person as the acting officer of both corporations, or if the contract is between two boards of directors, a majority or all of whom are common to both boards, then the better rule is that the contract or other transaction is voidable merely at the option of either party, notwithstanding it is perfectly *Page 587 
fair to both and the best of good faith has prevailed on the part of all." But "not voidable at the option of either party, where fair and entered into in good faith, if the common officers are a minority of the board of directors or the contract was entered into on at least one side by officers not common to both corporations." Fletcher, Cyc. Corp., Perm. Ed., Vol III, § 961,p. 437.
Here, as previously stated, the directorate of the Capital Company is identical with that of the Mortgage Company, two directors are on the Board of the Bank, and Mr. MacEvoy has a direct interest in the Bank as a stockholder, in addition to his indirect interest therein as a stockholder of the Capital Company. The directors of a corporation are trustees and bound in the exercise of their duty to endeavor to secure the highest and best price obtainable for corporate assets. One of the tests of unfairness of a contract is inadequacy of price. Fletcher, Id.,
§ 963, p. 446. Geddes v. Anaconda Copper Mining Co.,254 U.S. 590, 65 L.Ed. 425, 41 Sup. Ct. 209. In this case, not only is there no proof that the directors endeavored to obtain any offer for the assets and property of the Mortgage Company other than the single offer by the Bank, but it affirmatively appears that the plaintiff, Bresnick, offered $50,000 in excess of the consideration to be paid by the Bank. This clearly indicates an inadequacy of consideration.
It is unnecessary to specify the methods by which directors of a corporation in dissolution should offer its assets for sale. Men of large financial affairs as in the instant matter know that usually the most advantageous results are obtained from competitive interests. In this case it does not appear that the assets of the Mortgage Company were offered to anyone other than the Bank. When, as here, the transaction submitted to the scrutiny of the Court presents the acceptance of that single offer from a corporation whose directors interlock with those of the seller, and a substantially higher offer has been rejected, inadequacy of consideration and, hence, unfairness is amply demonstrated. Indeed, the unfairness to stockholders of the Capital Company who are not stockholders *Page 588 
of the Bank is patent. The proposals are definitely for the benefit of the Bank and particularly for those holders of Bank stock who are not stockholders of the Capital Company, to the detriment of the latter. In the light of the interest of the defendants in the Bank, their avowed object that the plan benefit the Bank and its stockholders, I deem it unfair and inequitable; and, hence, void.
The United States Supreme Court in Geddes v. Anaconda CopperMining Co., supra, held that where a sale is voidable for inadequacy of price because of a common director, it should be set aside absolutely, and that it is improper to order that the property be offered at public auction and if no bid be received greater than the sale price, the sale should be confirmed.Fletcher, Id., § 963, page 446. I do not mean to say that the directors of the Mortgage Company may not genuinely determine to dissolve the corporation and that its assets may not be purchased or acquired by the Bank, but the Bank should have no preferential right — certainly not to the exclusion of a higher offer.
The plaintiffs and the intervenors, stockholders of the Capital Company, have sufficient interest and right to attack the transactions about to be entered into between the corporation of which they are stockholders and its subsidiaries. Stockholders of the parent company are de facto proprietors of the assets and franchises of the subsidiary. State v. Atlantic City and ShoreR.R. Co., 77 N.J.L. 465 (E. A. 1908), at page 483.
A judgment will be entered declaring the proposed transactions void and enjoining their consummation. The complaint will be dismissed as to the individual defendants. *Page 589