JOHN A. BRUNNENMEYER *et al.*
*v.*
ERNEST H. BUHRE *et al.*

1. INCORPORATED RELIGIOUS SOCIETIES — *real estate, in what manner held.* Where real estate is conveyed to the trustees of a religious society which is incorporated under the statute, and to their successors in office, the title becomes vested

in those officers, for the use of the society, and in trust for the purposes of its organization, as completely as though the use had been declared in the deed.

2. SAME — *the members are beneficiaries.* Each member of a church, so organized, becomes entitled to a beneficial interest in the property of the church so long as his connection or membership continues.

3. SAME — *powers of the trustees in respect of the property.* The legal title to the property is vested in the trustees for convenience in its control and management for the purposes of the trust; they have no power to pervert it, or prevent its being used for those purposes. The power is subordinate to the customs and rules of the organization.

4. SAME — *authority of the members.* Nor can a majority of the members of the church control the action of the trustees, against the usages and regulations of the church.

5. SAME — *jurisdiction in chancery.* Whenever the trustees of such a society do any act which obstructs the enjoyment of the property, for the purposes and in the mode authorized by the usages of the church as an organized body, they are guilty of a violation of the trust, which will be corrected by a court of chancery. A trust of this character is not distinguishable in this from any other trust over which courts of chancery exercise a supervisory power.

6. Nor is it an answer to this claim of jurisdiction in a court of chancery, that a *mandamus* might lie, or that the statute has authorized the members of the church to remove the refractory trustees and elect others. The jurisdiction of a court of chancery over trusts is too firmly established to be shaken by those considerations.

7. So, as in this case, where the trustees, by direction of a minority of the members, closed the church edifice against their minister and those disposed to attend upon his ministrations, and contrary to the wish of a majority of the members, it was competent for a court of chancery to intervene to prevent the trustees from thus obstructing the use of the property for the appropriate purposes of the trust.

8. INJUNCTION — *when the proper remedy.* It is no objection to an injunction issuing in such case, that the particular act of closing the church was already done; it was not like a simple act of trespass, but was a continuing act, designed to deprive the members of the church and their pastor of their rights in the future as well as in the past; and to prevent such continuing injury and deprivation of right, the court might well interpose by its restraining power, to grant preventive relief, to the same extent that it could prevent a single injurious act.

·WRIT OF ERROR to the Court of Common Pleas of the city of Aurora, in Kane county; the Hon. BENJAMIN F. PARKS, Judge, presiding.

The complainants, Ernst H. Buhre, Michael Habermeyer, Stephen Funk, John Brugge and Carl Hubner, for themselves,

and also on behalf of the members of the German Evangelical Lutheran Saint Paul's Church, of Aurora, Illinois, except the members thereof made defendants, exhibited their bill in chancery in the court below, against John A. Brunnenmeyer, Frederick Fickensher, William Fickensher, Christian Bauman and Henry Brunnenmeyer, for an injunction.

The complainants allege that on or about the 1st of January, 1856, the said church was duly organized and incorporated according to the statute of this state, and, at the same time, John A. Brunnenmeyer, John J. Scharschug and Frederick Fickensher, were elected and qualified as trustees of the church, according to law; and from that time to the filing of the bill, continued to be the legal trustees of said church.

It further appears from the bill that a certain lot of ground, situate in the said city of Aurora, was conveyed to the said trustees, and to their successors in office, for the exclusive use and benefit of the church; and that a church edifice was erected on the lot mentioned, about the year 1855, by the members of the church, and the community in general, by way of donations to and for the sole use and benefit of said church, and for the exclusive purpose of public worship of Almighty God, according to the discipline, rules and customs of the Evangelical Lutheran Church, so known and called. That on the first day of January, 1861, and for a long time before, and ever since, the complainants were and have been members of the said church, and since the said organization have worshiped in the said church edifice according to the discipline and customs of the said Lutheran church.

The bill charges that the defendants, John A. Brunnenmeyer and Frederick Fickensher, trustees as aforesaid, absolutely refused to perform and discharge the duties and trusts devolved upon them as such, and did, on the 9th day of February, 1861, with the other defendants, also members of the said church, with force, and against the will and consent of the church, and in violation of their trust and duty, and against the rights of the complainants and other members of said church, fasten up the said church edifice for the avowed

purpose of preventing the complainants from entering into the same at any time, for the purpose of worshiping as aforesaid, according to the right and privilege of the complainants and other members of that church.

The bill concludes with a prayer for an injunction restraining the defendants from interfering or in anywise intermeddling with the complainants and members of the church, in convening and worshiping according to the usages and customs thereof, as they had theretofore done.

The injunction was granted, and the writ duly served upon the defendants, who subsequently answered the bill, admitting the closing of the church edifice, but alleging that it was done upon proper authority; representing that at a meeting of the members of the said Lutheran church, called by the said complainant, Buhre, who was their pastor, on the 6th day of January, 1861, said Buhre resigned his position as such pastor, and then stated that in four weeks from that day he would preach his farewell sermon. That at a meeting of the members of the church, held on the 30th of the same month, said resignation was unanimously accepted by the congregation, and written notice of such acceptance given to said Buhre. That on the 8th of February following, at a meeting held by the members of the church, pursuant to a call of the trustees, it was unanimously resolved by the members that the church edifice should be closed until the service of another pastor could be procured, and the meeting instructed the trustees to obtain the keys to the church. That in pursuance of that direction, the said trustees did lock up the door of the said church edifice, to protect the property in the church, as they lawfully might, which is the supposed fastening up of the church building complained of in the bill.

Upon the hearing, the complainants introduced in evidence certain chapters of the church discipline, as follows:

CHURCH DISCIPLINE.

The German Evangelical Lutheran St. Paul's Church, (Unaltered Augsburgishe Confession,) Aurora, in the State of Illinois:

We, the undersigned, ministers, elders, stewards and trustees and members of the above named church, adhere to the following church discipline:

### CHAPTER I.

1. Only such person can be minister who adheres to the above named confession, and who is properly ordained.

2. In all meetings of the church council and congregation, it shall be his duty to preside.

3. He shall examine all who shall wish to become members of this society, and he shall either receive or reject them.

4. He shall continue his office as long as he lives.

### CHAPTER II.

1. The church council consists of the minister, elders, stewards and trustees. The elders, stewards and trustees shall continue in office until others are elected in their places.

2. The church council holds regular meetings at fixed times; it may, however, at any time be called together by the minister.

3. They shall, in brotherly love, counsel over the spiritual and general welfare of the society.

4. In absence of the minister, one of the elders shall preside.

### CHAPTER V.

The society elects three trustees, in the same manner as elders and stewards. They shall take the temporary affairs of the church in safe keeping.

### CHAPTER VI.

All those shall be considered members of the church who, according to the custom of the Lutheran church, have been received by baptism and confirmation. As legal members they must take part diligently in the public worship, and, according to the usage of the church, give their part to its support; they must live in conformity with the requirements of the gospel, and, by signing the church discipline, declare that they will uphold and sustain the Lutheran church, with its doctrine and usages. All such male members who have

become of age shall be considered qualified to vote at each election in the society.

It appears, from the evidence, that the complainant Buhre had been the pastor of the church from its organization, but on account of some dissatisfaction arising between him and some of the members of the church, he announced, at a meeting of the church, on Sunday, the sixth day of January, 1861, that one month from that day he would leave them and preach no more for them. About three weeks after that there was a meeting of fifteen or eighteen of the members of the church, at the house of Frederick Fickensher, by whom it was resolved to accept the resignation of Mr. Buhre, and he was notified accordingly. Of this meeting there seems not to have been a general notice among the members. Shortly after, another meeting was held at the same house, upon the call of the two trustees named, Fickensher and Brunnenmeyer, at which fifteen members were present, who instructed those two trustees to lock up the church building, which was done, to the exclusion of their pastor and those members who desired to retain him in that position; and this is the act complained of in the bill. The eighteen members who were present at the first of these meetings, and who voted to accept the resignation of their pastor, constituted but a minority of the members of the church.

In the meantime, however, on Sunday the 13th of January, 1861, at the usual hour, there was church service, and a large attendance at the meeting, Mr. Buhre officiating as minister. At this meeting the pastor notified the congregation that on the next day, at 2 o'clock in the afternoon, at the church, there would be an election for trustees, and such other business would be transacted as might properly come before the church. Of this meeting, those of the members who were not present at the announcement in church were duly notified in writing. Accordingly, on the next day, at the hour appointed, there was a meeting held by the members at the church to elect trustees, elders and other officers of the church, &c.;

Mr. Buhre called the meeting to order, and the members proceeded to elect trustees, elders and the other officers of the church; then one of the members made a motion that Mr. Buhre be requested to withdraw his resignation and continue to be the pastor of the church, which motion was seconded and carried; thereupon Buhre withdrew his resignation, and said he would continue to be their pastor as before; Brunnenmeyer and Fickensher, and some others of their party, ten or twelve in all, were present at the congregation of the meeting, and Brunnenmeyer asked what was the object of this meeting; Mr. Buhre told him that it was to elect trustees and other church officers, and do such other business as might properly come before the church; and then Brunnenmeyer and Fickensher, and others of his party, left the church, leaving about thirty or thirty-one members, who constituted a majority, who participated in the election and other business of the church at this meeting.

The court below entered a decree, finding the principal facts in favor of the complainants, and perpetuated the injunction according to the prayer of the bill. Thereupon the defendants sued out this writ of error, and now question the correctness of that decree.

Messrs. METZNER & WHEATON, for the plaintiffs in error.

Mr. R. G. MONTONY, for the defendants in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

The statute declares that the title of real estate, held by trustees for the use of an incorporated religious society, shall vest in them by the assumed corporate name. They become seized for the use of the body. And each member of the church becomes entitled to a beneficial interest in the property of the church, so long as his or her connection or membership continues. The trustees chosen by the organization, are, for convenience, vested with the legal title for its control and management, in its enjoyment by the body. They have no power to pervert it, or prevent it from being used for the pur-

poses of its original design. Nor can a majority of the members of the church control the action of the trustees, against the usages and regulations of the church. Their power is not arbitrary nor is it discretionary, but it is subordinate to the customs and rules of the organization.

By the election which organized the corporation, the title became vested in the trustees and their successors, for the use of the trust, as completely as if the use had been declared by deed. And whenever they perform any act which obstructs the enjoyment of the property for the purposes and in the mode authorized by the usages of the church as an organized body, they are guilty of a violation of the trust which requires correction. A trust of this character is not distinguishable in this from any other trust, over which courts of chancery exercise a supervisory power. They hold the property for the use of beneficiaries, and the utmost good faith is required in the performance of their trust. Nor is it an answer to the claim of jurisdiction of the court that a *mandamus* might lie, or that the statute has authorized the members of the church to remove the trustees and to elect others. The jurisdiction in equity over trusts is too firmly established to be shaken. The fact that a court of law may have concurrent jurisdiction, or that the statute has given a remedy, does not deprive the chancellor of his equity powers.

Then have these trustees performed any act requiring the interposition of a court of equity? Were they warranted in closing the church edifice against the minister and those disposed to attend his ministrations, thereby depriving them of using it for the purposes of worship? In justification of the act, it is claimed that the minister had resigned his pastoral charge. It appears that about the sixth of January, 1861, he gave notice, that in four weeks he should preach his last sermon, and leave the church. On the 13th of that month, notice was given to the congregation, that on the next day there would be a meeting to elect trustees, and to dispatch such other business as might properly come before the church. At that meeting about thirty members were in attendance, and took part in the

business then transacted, whilst ten or twelve other members retired, when they learned the object of the meeting. The minister was then requested to withdraw his resignation, which he did, and the withdrawal was accepted by the members present. It is not denied that this meeting was regularly called, or that a majority of the members of the church were present and acting.

The trustees, about three weeks after the minister gave notice of his intention to resign his place, called a meeting of the church, which was convened at a private house. From fifteen to eighteen members were present. It does not appear that the notice of this meeting was general, or that the time, place or object of the meeting was generally known to the members of the church. When they convened, those present voted to receive the minister's resignation. A subsequent meeting was called in like manner, when fifteen members seem to have been present, and voted that the church edifice should be closed. This was afterwards done by the trustees, and is the act complained of in the bill.

The third chapter of the church discipline, which was read in evidence, provides, that there shall be regular meetings of the church council, and that they may be called together at any time by their minister. By the sixth chapter it is provided, that all male members, who have become of age, and have conformed to the requirements of that chapter, may vote at each election of the society. From so much of the discipline as is in evidence, it does not very clearly appear who are authorized to transact the general business of the church, such as employing or discharging the minister, electing stewards and elders, and such like business. But the first chapter of the discipline does provide that the minister shall preside at all meetings of the church council and congregations. From this, it would seem that the congregation convened for some purpose, and what more natural than to elect trustees, stewards and elders, or to employ the minister. The sixth chapter provides for the qualification of the voters at elections.

But if it was the duty of the church council to employ or

release the minister from his engagements, or if that duty devolved upon the trustees or elders, it is manifest that none of these bodies have ever acted for the purpose of receiving his resignation. If, as we suppose, it was the right of the congregation to determine whether it would be received, then we see that a majority of all the members requested its withdrawal, which was done. So that let the power to accept his proposed resignation rest where it may, there is no evidence in this record that it was ever received, and until his relation of pastor for the church had been terminated, he had the right to officiate in that capacity. And, as incident to that right, he, and those desiring to attend upon his ministrations, had the right to occupy the church edifice for the purpose. When the trustees closed the building, they perverted the property from its original use, and authority to do so was not conferred upon them by the minority of members convened by the trustees.

It is, however, urged that the act complained of is already performed, and there is nothing to restrain. This is not like a simple act of trespass. It is a continuing act, and is designed to operate upon the complainants, to deprive them of their rights in the future as well as in the past. It was designed to prevent the complainants from exercising their right of entering the church for the purpose of engaging in acts of worship. To prevent this continuing injury and deprivation of right, the court has the authority to interpose by its restraining power, and to grant preventive relief, to the same extent that it could to prevent a single injurious act. For these reasons the decree of the court below must be affirmed.

*Decree affirmed.*