,150   229
  58a  450

# THE ATTORNEY GENERAL OF THE STATE OF ILLINOIS

## *v.*

## THE NEWBERRY LIBRARY.

*Filed at Ottawa May 8, 1894.*

1.  NEWBERRY WILL—*powers of the trustees—limitations of the will.*
The trustees under the Newberry will had two things to do, viz., to
manage and to distribute the estate.  When the appointed time for
distribution came, and the estate was distributed, their functions as
trustees of the will ceased, and the distributees took an absolute own-
ership, free of any control of the trustees.  So, too, the share to be
applied for the founding of a free public library, when so applied, was
to belong absolutely to such library, freed from all control of the
trustees appointed by the will.

2.  The limitation of the powers by the Newberry will as to the time
the trustees might lease property and as to investments and the securi-
ties taken on loans, has nothing to do with any portion of the estate
devised after its distribution by the trustees.

3.  PUBLIC LIBRARY—*statute construed—effect on trustees under the
Newberry will.*  Section 4 of an act entitled "An act to encourage and
promote the establishment of free public libraries in cities, villages
and towns," approved June 17, 1891, does not add to the duties of the
trustees of the Newberry will.  It does make the clause of the will pro-
viding for the founding of a free public library a part of the law of the
being of the Newberry Library, and such corporation can not, under
section 4 of such act, transform the library into a book repository, not
free, or remove it from the North Division of Chicago.  But such cor-
poration is not bound, in the management of its income, to pay heed
to the restrictions put upon the trustees from whom it received the
fund.

4.  CHANCERY JURISDICTION—*to construe an instrument creating a
trust.*  It is one of the well recognized functions of courts of equity,
whenever there is any *bona fide* doubt as to the true meaning of an in-
strument creating a trust, to, at the suit of the trustee brought for that
purpose, give a judicial construction to the instrument, and direction
to the trustee as to his powers and duties thereunder.

5.  ATTORNEY GENERAL—*representative of the public.*  Where the
public is interested in the execution of a trust, the Attorney General
is a proper party, either plaintiff or defendant, as the representative of
the public.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. F. DUNNE, Judge, presiding.

This was a bill in chancery, brought by the Newberry Library, a corporation organized under the laws of Illinois, to obtain a construction of certain provisions of the will of Walter L. Newberry, deceased.    The Attorney General of the State of Illinois being made a party defendant, interposed a demurrer to the bill, and his demurrer being overruled, and he having elected to abide by his demurrer, a decree was entered in accordance with the prayer of the bill.    The decree being taken to the Appellate Court was affirmed, and to obtain a review by this court of the judgment of affirmance, the Attorney General now brings the record here by writ of error. The facts are sufficiently stated by the Appellate Court, and are substantially as follows:

"This suit was brought in the circuit court of Cook county by the Newberry Library, a corporation organized under the laws of the State of Illinois, against the Attorney General of the State of Illinois, to obtain the instruction and direction of a court of chancery as to whether certain limitations on the powers of the trustees of the estate of Walter L. Newberry, deceased, limiting the powers of said trustees during the administration and management of the said trust, continue to exist as limitations after the distribution of said estate, and what is the effect upon the provisions of said will imposing such limitations, of section 4 of the act of the legislature of the State of Illinois, entitled 'An act to encourage and promote the establishment of free public libraries in cities, villages and towns of this State,' approved June 17, 1891, in force July 1, 1891.

"Walter L. Newberry, of the city of Chicago, county of Cook, and State of Illinois, died November, 1868, leaving a last will and testament, which was subsequently admitted to

probate in the county court of Cook county, Illinois, and by the terms of which will, Mark Skinner and Eliphalet W. Blatchford were appointed as trustees to control and manage his estate left to said trustees, until the final distribution thereof, as directed by the will. Among the powers given to the trustees while managing and administering the trust, was the power to make leases of the real estate belonging to the trust for terms not exceeding twenty years. The clause limiting such power is as follows: 'If, in the opinion of my said trustees, it would be for the best interests of my estate, in order to secure valuable improvements to be made upon any unimproved lot or land belonging to my estate, to lease said lot or lands for a longer period than five years, then my will is, and I hereby direct, that my said trustees lease and demise the same for any period longer than five years, but not exceeding the period of twenty years, as they may see fit.'

"Another limitation on the power of the trustees is the limitation directing what investments shall be made by the trustees, and is as follows: 'In making investment of money that may, from time to time, come into the hands of my trustees, etc., it is my wish, and I direct, that my said trustees invest the same, either in the securities of the United States of America, or of the State of Illinois, or of the county of Cook, or of the city of Chicago, or in loans secured by bond or mortgage on good, improved, unincumbered real estate in the city of Chicago, worth, in their judgment, at least twice the amount of the money loaned and secured thereon, the land to be worth, without improvements, at least as much as the amount loaned upon such improved property; it being my intention that my said trustees may invest in any or all of said securities as they may see fit, but in none other; and in purchasing bonds of the United States, State of Illinois, county of Cook or city of Chicago, to pay therefor the market price at the time and times of making such purchase.'

"By the terms and provisions of the will, the time for final distribution and division of the estate of the decedent was postponed until the death of the widow and two daughters of the decedent, and the provisions of the will relative to the founding of a free public library were contingent upon the death of the two daughters of the decedent without lawful issue. Until such final distribution and division of the estate the trustees were directed to hold, manage, control and administer the estate, subject to the directions and limitations contained in the will, for the administration of the trust, and upon such final distribution the trustees were directed to convey the estate to the devisees and beneficiaries who should be entitled thereto at the time of such distribution.

"Subsequently the two daughters of the decedent died without leaving issue. Thereafter the widow of the decedent also died, and the time arrived for the distribution of the estate of the decedent, and such distribution was made as directed in the will. At the time of such distribution, Eliphalet W. Blatchford was the sole surviving and acting trustee under the will of Walter L. Newberry, deceased, and as such trustee he held the title to a large number of lots, pieces and parcels of land located in the city of Chicago, and a large amount of personal property, and upon such distribution one-half part of the estate was conveyed to the devisees entitled thereto by the terms of the will, and one-half part thereof was set apart and applied by Eliphalet W. Blatchford, as sole surviving trustee, towards the purposes designated in the will, namely, to the founding of a free public library in the North Division of the city of Chicago.

"On June 17, 1891, an act was passed by the legislature of the State of Illinois, entitled 'An act to encourage and promote the establishment of free public libraries in cities, villages and towns of this State,' approved June 17, 1891, in force July 1, 1891. For the purpose of carrying out the object aforesaid, as designated in the will, namely, the founding

of a free public library in the North Division of the city of
Chicago, Eliphalet W. Blatchford, sole surviving trustee,
caused the Newberry Library to be organized under the act
aforesaid, on April 13, 1892, and conveyed to such corpora-
tion all the real estate and personal property before that time
by him set apart for the purpose aforesaid, and the same was
accepted by the corporation.    This was done under the pro-
visions of the will as to the founding of a free public library,
which are as follows:   'The other share of my estate shall be
applied by my said trustees, as soon as the same can consist-
ently be done, to the founding of a free public library, to be
located in that portion of the city now known as the North
Division.    And I do hereby authorize and empower my said
trustees to establish such library, on such foundation, under
such rules and regulations for the government thereof, appro-
priate such portion of the property set apart for such library
to the erection of proper buildings and furnishing the same,
and such portion to the purchase and procurement of books,
maps, charts, and all such other articles and things as they
may deem proper and appropriate for a library, and such
other portion to constitute a permanent fund, the income of
which shall be applicable to the purpose of extending and
increasing such library, hereby fully empowering my said
trustees to take such action in regard to such library as they
may judge fit and best, having in view the growth, preserva-
tion, permanence and general usefulness of such library.'

"Section 4 of the said act of the legislature of the State of
Illinois is as follows:   'Organizations formed under this act
shall be bodies corporate and politic, to be known under the
names stated in the respective certificates of articles of incor-
poration, and by such corporate names they shall have and
possess the ordinary rights and incidents of corporations,
and shall be capable of taking, holding and disposing of real
and personal estate for all purposes of their organization.
The provisions of any will, deed or other instrument by which

endowment is given to said library, and accepted by said trustees, managers or directors, shall, as to such endowment, be a part of the organic and fundamental law of such corporation,' etc.

"By reason of this section of the statute, and the provisions of the will and codicil, the power of the Newberry Library to give leases of its real estate for terms in excess of twenty years has been questioned, and although it has had frequent applications for such leases, it is embarrassed by such question, and can not negotiate therefor, and can not obtain such large rentals as it might obtain were it not for such question as to its powers, and it has been compelled to decline to negotiate with parties desiring such leases who would be willing to pay large rentals were such doubt as to its power removed. The corporation has also, from time to time, had opportunity to make desirable investments other than those set forth in the will, and is unable to take advantage of the same and negotiate therefor by reason of doubt as to its powers as set forth in the will, and thereby it has lost, and will continue to lose, large profits and gains to the charitable beneficiaries of the charity it represents. The bill therefore asked the instructions and directions of the court in the premises, that it might be adjudged that such limitations on the powers of the trustees to make leases to periods of twenty years, and the limitations on the powers of the trustees to make investments as set forth in the will, were temporary and incidental, only, and were only designed to control the trustees under the will during the continuance and management of the trust, and ceased to exist on the final distribution of the estate, and that when the property was conveyed to the Newberry Library, the Newberry Library received and took the same free of and discharged from such limitations, and that such limitations, being only temporary, did not become a part of the organic and fundamental law of the Newberry Library.

"The Attorney General of the State of Illinois, being duly served with a copy of the bill, entered his appearance and filed a general demurrer. Subsequently the demurrer was overruled and a decree entered, whereby the court found the complainant entitled to relief, and declared that according to a true construction of the will of Walter L. Newberry, deceased, the limitations therein, whereby the trustees were only authorized to make leases for periods not exceeding twenty years, and whereby the trustees were limited to the investments specified in the will, were confined to the period of the administration and management of the trust confided to the trustees, and continued only up to the final distribution and division of the estate of the decedent, and no longer, and that upon the organization of the Newberry Library under the act of the legislature, entitled 'An act to encourage and promote the establishment of free public libraries in cities, villages and towns,' approved June 17, 1891, and in force July 1, 1891, and the conveyance to the corporation by Eliphalet W. Blatchford, surviving trustee under the will, of the one-half part of the property applied and set apart for the founding of a free public library, the provisions of the will limiting the power of the trustees under the will to make leases of real estate of the decedent for periods of twenty years, and the limitation on the power of the trustees to make investments, as specified in the will only, ceased to exist, and did not become parts of the organic and fundamental law of the corporation. The court therefore ordered, adjudged and decreed that the complainant holds the estate and property conveyed and transferred to it by Eliphalet W. Blatchford, surviving trustee under the will of Walter L. Newberry, deceased, and the proceeds thereof, free from the restrictions and limitations contained in the will and codicil, relative to leases and investments, and that the complainant has the same powers over the estate and the proceeds thereof that it would have if the restrictions in the will and codicil in regard to leases and in-

vestments did not exist. The Attorney General, plaintiff in error, brings this writ of error to this court."

The Appellate Court, after stating the facts as above, rendered the following opinion:

WATERMAN, J.: "It is one of the well recognized functions of courts of equity, wherever there is any *bona fide* doubt as to the true meaning of an instrument creating a trust, to, at the suit of the trustee brought for that purpose, give a judicial construction to the instrument, and direction to the trustee as to his powers and duties thereunder. *Attorney General* v. *Haberdashers' Co.* 1 Ves. Jr. 295; *In re Shaw's Trusts*, L. R. 12 Eq. 124; Perry on Trusts, sec. 746; Pomeroy's Eq. Jur. secs. 1064, 1156; *Bailey* v. *Briggs*, 56 N. Y. 407.

"Where the public is interested in the execution of a trust, the Attorney General is the proper party, either plaintiff or defendant, as the representative of the public. Barbour on Parties, 468, 661; Tudor's Law of Charitable Uses, 161; Perry on Trusts, sec. 773; *Hunt* v. *Chicago and Dummy Railroad Co.* 20 Ill. App. 282; *Jackson* v. *Phillips*, 14 Allen, 539; *Fund Association* v. *Beckman*, 21 Barb. 565.

"The principal question presented in this case is, whether the limitation as to the length of time for which leases of real property, and the restrictions upon the character of investments to be made by trustees of the will, continue after the property has passed out of the hands and control of such trustees.

"By the will the estate was divided, substantially, into two principal shares or classes. One of these was, after the happening of certain events, to be distributed to various individuals, relatives of the testator; the other share of the estate was to be applied by his trustees to the founding of a free public library. The testator foresaw that, as happened, a considerable number of years might elapse before his trustees could distribute the estate in accordance with the provisions of the will, and he also realized that the arrival of the period of

distribution was uncertain, and might come within the term of twenty years. In order, therefore, to provide that the title to real estate, when divided at the period of distribution, should not be encumbered by too long leases, he, while giving, in many respects, the most ample powers of disposition to his trustees, restricted them, in the matter of leasing, to the making of leases for a period not exceeding twenty years; and foreseeing the desirability that the personal part of the estate should, at the arrival of the time for distribution, consist of readily convertible assets having a well recognized market value, he provided that the trustees of the will should make investments of only certain kinds.

"The numerous individuals who were the objects of the testator's bounty, it is manifest, take, at the distribution of the estate, an absolute ownership, free of any control of the trustees, but take the distributed estate in the condition in which the trustees, in accordance with the terms of the will, have placed it. So, too, the share to be applied for the founding of a free public library, when so applied, was to belong absolutely to such library, freed from all control of the trustees appointed to execute the will.

"The trustees, under the will, had two things to do, viz., to manage and to distribute the estate. When the appointed time for distribution came, and the estate was distributed, their functions as trustees of the will ended. In accordance with the will they have given over the share to be used for the founding of a free public library to a corporation created for the purpose of receiving such share and administering it in accordance with the testator's direction in that regard. There is in the will no provision as to how any of the individuals who took under this will were to manage their portions, and there is no direction as to the manner in which the property devoted to the founding of a free public library is to be managed. The setting apart of a portion as a permanent fund to provide an income for the purpose of extending and

increasing the library is mentioned, but no directions as to its amount or management are given.

"The provisions of the will limiting leases of lands to twenty years and the restriction as to the character of investments, are applicable to the entire estate. They affect the shares of individuals as much as the share devoted to library purposes. Such provisions have nothing to do with any portion of the estate after its distribution by the trustees of the will.

"Section 4 of the act under which appellee became an incorporated entity does not add to the duties of the trustees of this will. It does make the clause of the will providing for the founding of a free public library a part of the law of appellee's being, and appellee, under the provisions of said section 4, can not transform the library into a book repository, not free, or remove it from the North Division of the city of Chicago. It is bound to effectuate the testator's desires in this regard. It is not bound, in the management of its income fund, to pay heed to the restrictions put upon the trustees, from whom, in the due course of administration, it received the fund.

"The decree of the circuit court entered upon overruling the demurrer of the Attorney General to the bill is affirmed."

Mr. M. T. MOLONEY, Attorney General, *pro se.*

Mr. DAVID FALES, for the defendant in error.

Per CURIAM: After carefully considering the questions presented by this record, we are disposed to adopt the reasoning and conclusions of the Appellate Court, and to affirm the judgment of that court upon the grounds stated in the opinion delivered by Mr. JUSTICE WATERMAN.

*Judgment affirmed.*