Philip Kolin, a Minor, by Mrs. Julie Kolin, his mother and Next Friend; Ruth Afterguth, a Minor, by Mrs. Edith Litt, her Next Friend; Stanley Sands, a Minor, by Mrs. Dorothy Maloney, his mother and Next Friend; Michael Eva Litt, a Minor, by Mrs. Edith Litt, her mother and Next Friend; Marie Davis, a Minor, by Mrs. Bernice Davis, her mother and Next Friend, all on behalf of themselves and all others similarly situated and on behalf of all pupils of the St. George School for Girls; Mrs. Edith Litt and Mrs. Bernice Davis, on behalf of themselves and all others similarly situated and on behalf of the St. George School Parents Committee, Appellees, v. John Leitch, Adolph Hayes, George Stucker and Caroline Williams, Appellants.

Gen. No. 45,406.

Opinion filed June 13, 1951. Rehearing denied July 16, 1951. Released for publication July 30, 1951.

WILL A. KELLY, of Chicago, for appellants.

GOLDBERG, DEVOE & BRUSSELL, of Chicago, for Appellees; ABRAHAM W. BRUSSELL, and DANIEL FOGEL, both of Chicago, of counsel.

MR. JUSTICE LEWE delivered the opinion of the court.

Plaintiffs, pupils of St. George School for Girls, by their next friends, and certain members of the St. George Parents Committee of the school, in behalf of themselves and others similarly situated, filed an amended complaint against the members of the board of directors of the school and John Leitch, the successor trustee of the George J. Williams Charitable Trust. The amended complaint prays for a declaration of the rights of plaintiffs, an injunction restraining defendants from closing the school, the removal of the directors and trustee of the Williams Trust, appointment of a successor trustee with authority to use the principal of the trust to pay school deficits, and the appointment of a receiver for the school.

After a hearing on the complaint, a temporary injunction was issued restraining the board of directors from closing the school and directing them to accept pupils for enrollment.

According to the allegations of the amended complaint, the school was incorporated September 1, 1920 as an Illinois not-for-profit corporation, to board,

educate and develop children whose parents have died, disagreed, or are so occupied that they cannot give their child or children the necessary attention for their care, education, and development, to the end that they become useful, loyal, and patriotic citizens of the United States of America. During the academic year ending June 1950 and for a number of years immediately preceding the past academic year, there have been enrolled on the average of 160 and 180 children, many of whom were from broken homes or were the offspring of war widows or working mothers, and, in addition, a substantial number of children enrolled during this time were referred to it by the juvenile court of Cook county and by the superior court of Cook county. At the present time the school operates the only complete child care center in that part of Chicago commonly known as the Oakland-Kenwood area which offers day care during normal working hours as well as full time boarding care of children. Because of the valuable service rendered the community, the school has become a vital and necessary institution in the area and in Chicago generally. Since 1923 funds necessary to operate the school have been received from the income of a charitable trust created by Williams. Under the terms of the trust the net income of the trust fund is subject to the order of the board of directors of the school. Defendant Leitch is the present trustee of the Williams trust fund. January 17, 1950 the board of directors of the school took steps to shut down the school permanently, on the alleged ground that the income from the trust fund, together with the tuition fees, was insufficient to maintain its operation. Members of the parents committee raised the sum of $5,700 and out of this fund turned approximately $2,600 over to the board of directors of the school to cover an alleged existing deficit, as a result of which the board of directors continued to operate

the school for the remainder of the academic year of 1950.

The amended complaint charges that the board of directors of the school maintain an unco-operative attitude toward the parents committee, thus violating its duty to children enrolled in the school as beneficiaries of the school as a charitable corporation of the trust fund; that the board of directors, due to lack of funds, about the month of May 1950 decided to close the school for the summer term, contrary to the established custom of year-around operation; that if the school is forced to close permanently the minor plaintiffs and others in similar situation will remain without accommodations for their care and education necessary by virtue of their unfortunate family situations; that the pupils of the school who are by necessity ''boarders'' therein, of whom there are at present forty, will be left homeless; that such disregard of the welfare of said children is a violation of the fiduciary duty and an ignoring of the purposes of the school and trust fund created in its support as established by Williams.

The complaint further alleges that the contributions by the parents committee and other civic organizations, accumulated income from the trust fund, and the yearly income from the trust fund, in the aggregate are sufficient, in the opinion of the business manager of the school, to maintain it in operation; that the corpus of the trust fund, amounting to more than $85,000, should be used to defray any future deficit.

In their answer defendants aver that since the death of said George J. Williams, with the exception of two years during World War II, the operation of the school resulted in a deficit which was made up by funds derived from the Williams Charitable Trust; that the annual income from the trust fund is approximately $3,000, and that the principal of the trust fund is approximately $85,000; that a deficit resulted from

keeping the school open during the summer of 1950 in the amount of $3,278.52.

Defendants further aver that in the exercise of the powers vested in them as members of the board of directors they have determined that the financial condition of the school corporation and of the trust is such that the continued operation of the school would be unsound and result in further deficits and losses which would jeopardize the assets of the corporation. Defendants deny that the plaintiffs or the alleged parents committee have any right to direct or control the actions of the board of directors of the school; that they owe the plaintiffs any legal duty; and, further, that there is any power, right, duty, or obligation of the directors or the trustee to use or invade the corpus of the trust for any such purpose as plaintiffs allege.

The record shows that on September 1, 1950, the chancellor issued a writ of injunction. The order also provided that plaintiffs be given leave to join the Attorney General of the State of Illinois as a party defendant. October 13, 1950, Ivan A. Elliott, Attorney General of the State of Illinois, made a motion to dismiss the amended complaint, which was overruled. Afterwards the Attorney General filed an answer alleging, among other things, that the corpus of the Williams trust fund cannot be used to make up any deficit caused by the operation of the school, and that plaintiffs have no right to maintain the present action.

The basic question presented for determination is whether plaintiffs have the right to maintain the instant suit, when the Attorney General moves to dismiss the cause.

In the recent case of *People ex rel. Courtney v. Wilson*, 327 Ill. App. 231, suit was brought by the State's Attorney of Cook county to enforce a charitable trust created under the last will and testament of Kate Sturges Buckingham, which provided a fund for the

erection in Chicago of a suitable memorial to Alexander ·Hamilton. The architect, one Saarinen, answered and filed a counterclaim against the trustees. Saarinen joined in the prayer of the complaint and, in addition thereto, sought a money judgment against the trustees for damages resulting from a breach of contract. The chancellor dismissed the complaint and counterclaim for want of equity. Saarinen, the sole appellant, conceded that a proceeding to enforce or interfere in a charitable trust must be brought on behalf of the People by the State's Attorney or the Attorney General, and that he could not have filed his own complaint to accomplish this purpose. This court said the authorities are fully in accord on that proposition, citing *McGee v. Vandeventer,* 326 Ill. 425, *People ex rel. Smith v. Braucher,* 258 Ill. 604, *Attorney General v. Newberry Library,* 150 Ill. 229, and *Smith v. Thompson,* 266 Ill. App. 165.

In *Kerner v. Thompson,* 365 Ill. 149, the court held that the right of the State, acting through the Attorney General, to interfere in the handling of a public charitable use or to prevent or correct abuses, cannot be denied.

■ In proceedings affecting the administration or enforcement of a charitable trust, the Attorney General may come into the suit by intervention or be brought in by amendment to the pleadings, when necessary, and in case he should choose to do so he should be given the right to take charge and control of that portion of the litigation which relates to the public right. (*Stowell v. Prentiss,* 323 Ill. 309.)

Here the Attorney General was brought into the proceeding by amendment and shortly thereafter exercised his right to control the proceeding, by moving to dismiss the complaint.

Plaintiffs insist that after enrollment in the school, the pupils are definite beneficiaries of the school and

627

of the trust fund and thus have a right to maintain their action, without the intervention of the Attorney General. In support of their position they cite *Brunnenmeyer v. Buhre,* 32 Ill. 183, *Guilfoil v. Arthur,* 158 Ill. 600, *Garrison v. Little,* 75 Ill. App. 402, and cases in other jurisdictions. In none of the cases last cited does it appear that the question was raised whether a proceeding to enforce a charitable trust need be instituted on behalf of the people. Professor Bogert, in the law of "Trusts and Trustees," Vol. 2, sec. 414, states that "As a general rule, no individual or private citizen can sue to enforce a charitable trust merely on the ground that he believes he is within the class to be benefited by the trust and will receive religious, educational, eleemosynary, or other like benefits from the operation of the trust. The court usually requires that a suit for enforcement be brought by the established representative of the whole class of beneficiaries, namely, the Attorney General, so that the trustees may not be vexed by frequent suits, possibly based on an inadequate investigation, and brought by irresponsible parties. . . . But in a fairly large group of cases the courts have permitted individual *cestuis,* whose interests were more or less certain and fixed, to bring such suits. These decisions must be regarded as exceptional and dependent in large part on special circumstances showing that the plaintiff was sure to receive trust benefits, or on lack of opposition to the capacity of the complainant." And in "Scott on Trusts" vol. 3, sec. 391, p. 2054, the author says, "A person who has a special interest in the performance of a charitable trust can maintain a suit for its enforcement. He must show that he is entitled to receive a benefit under the trust which is not merely the benefit to which members of the public in general are entitled."

628

██ While there are some factual distinctions between the present case and *Kerner v. Thompson,* 365 Ill. 149, *Stowell v. Prentiss,* 323 Ill. 309, and *People ex rel. Courtney v. Wilson,* 327 Ill. App. 231, we think the principle announced in those cases is applicable to this case, and that the Attorney General had a right to take charge of the case and move for its dismissal.

██ Plaintiffs say that closing of the school is tantamount to terminating the trust. This contention is without merit, since the trust agreement, which is attached to the amended complaint, provides, in substance, that, if the school is no longer maintained as provided in the trust agreement, the net income of the trust estate shall be paid by the trustee in equal amounts to the Home for Destitute Crippled Children and the Chicago Home for the Friendless, and that in the event either of those corporations be dissolved or cease to be a corporation not-for-pecuniary-profit, the net income shall be paid to the Chicago Community Trust, for the care and education of little children in the City of Chicago, or to any institutions or corporations which it may select and which shall have in charge the care and education of little children in Chicago, and should the Chicago Community Trust cease to exist the net income of the trust "shall be paid to two charitable corporations, institutions, or organizations having for its purpose the care of little children and not conducted for profit" to be determined and designated by the judge of the probate court of Cook county.

The amended complaint does not allege fraud and, so far as the pleadings show, defendants in exercising their discretion acted in good faith. By his motion to dismiss, the Attorney General indicated his disapproval of plaintiffs' action. Since we hold that the Attorney General properly exercised his right to con-

trol the litigation, the chancellor erred in denying defendants' motion to dissolve the injunction.

We have considered the other points urged and the authorities cited in support thereof but in the view we take of this case it is unnecessary to discuss them.

For the reasons given, the order of November 10, 1950, denying defendants' motion to dissolve the temporary injunction, is reversed, and the cause is remanded with directions to dissolve the injunction, and for further proceedings not inconsistent herewith.

*Reversed and remanded with directions.*

BURKE, P. J. and KILEY, J., concur.