Art Institute of Chicago, Plaintiff, v. Latham Castle, Attorney General of State of Illinois, Defendant. National Sculpture Society, Petitioner to Intervene— Appellant, v. Art Institute of Chicago, Plaintiff and Appellee, and Latham Castle, Attorney General of State of Illinois, Defendant and Appellee.

**Gen. No. 46,771.**

First District, First Division.
April 2, 1956.
Released for publication April 30, 1956.

David Oppenheim, of New York, and Hastings, Snyder and Rockwell, of Chicago, for petitioner to intervene; David Oppenheim, of New York, and Laurens G. Hastings, George W. K. Snyder, and David P. List, all of Chicago, of counsel.

Latham Castle, Attorney General of State of Illinois, for appellee; William C. Wines, and Raymond S. Sarnow, Assistant Attorneys General, both of Chicago, of counsel.

Eckhart, Klein, McSwain & Campbell, of Chicago, for appellee Art Institute of Chicago; Percy B. Eckhart, William A. McSwain, and Howard F. Husum, all of Chicago, of counsel.

JUDGE BURKE delivered the opinion of the court.

On November 25, 1904, Benjamin F. Ferguson made his last will. The Northern Trust Company was named as trustee. He died on April 10, 1905. The will was admitted to probate in the Probate Court of Cook

County and the estate was duly administered and distributed. Subparagraph (e) of the Fifth paragraph of the will reads:

"My said Trustee after paying the bequests hereinabove mentioned and establishing or realizing and keeping intact a permanent trust fund of not less than $1,000,000.00 shall annually thereafter or oftener, if required, pay the entire net income arising therefrom (after deducting its compensation as Trustee herein mentioned) to The Art Institute of Chicago, to be known as the B. F. Ferguson Monument Fund and entirely and exclusively used and expended by it under the direction of its Board of Trustees in the erection and maintenance of enduring statutary and monuments, in the whole or in part of stone, granite, or bronze, in the parks, along the boulevards, or in other public places within the City of Chicago, Illinois, commemorating worthy men or women of America, or important events in American History. The plans or designs for such statutary or monuments and the location of the same shall be determined by the Board of Trustees of such Institute."

On May 22, 1933, the Circuit Court entered a decree in the case entitled "The Art Institute of Chicago, a corporation, v. Otto Kerner, Attorney General of the State of Illinois," construing the word "monument" to mean and include a memorial building. The decree authorizes the expenditure by the Art Institute of Chicago of moneys belonging to the fund for the erection of a memorial building east of the Illinois Central Railroad right of way in Grant Park to be the key building in a building program for the Institute which included several other buildings. The memorial building authorized by the decree has never been constructed.

In a complaint filed on January 7, 1955, by the Institute against the Attorney General of Illinois the plaintiff says that it now proposes to erect a B. F.

· 475

Ferguson Memorial Building on a different site, that the present plans which have been completed by its architects and approved by its Board of Trustees provide for the erection of a five-story administration building in Grant Park immediately west of the right of way of the Illinois Central Railroad and immediately north of and adjacent to the present permanent Art Institute Building, rather than east of the railroad as contemplated at the time of the 1933 decree. Continuing, the complaint states that the building shall be used as an administration building for the Art Institute and shall contain offices, shops, studios and other rooms supplementing the existing facilities; that the building shall be of a type of architecture that will, in the opinion of the trustees of the Institute, be suitable and fitting as a memorial building; that the building will be erected upon land owned by the Chicago Park District and that by contract between the District and the Institute the latter will have the permanent use and occupancy of the building. The complaint further recites that in view of the fact that the 1933 decree authorizes the expenditure by plaintiff of moneys from the fund for the erection of a memorial building as specifically described in that decree, the plaintiff is in doubt as to whether the language of the will as construed in the decree means and includes any other memorial building, and prays that the court construe the will as construed in the 1933 decree and determine whether the language of the will as in that decree construed means and includes any other memorial building, and whether the use of the funds may be properly expended by it for the erection and maintenance of a memorial building as described in the complaint.

The Attorney General filed an answer admitting the factual allegations and submitting the matters concerning the interests of the people of the State of Illinois to the consideration and protection of the court, and praying that in the event a decree is entered pursuant

476

to the complaint that the decree will contain provisions to protect the interests of the people. The National Sculpture Society filed an amended petition representing that it is a corporation not for profit created under the laws of New York, organized for artistic and educational purposes and for the purpose of fostering the development and appreciation of sculpture, spreading the knowledge of good sculpture, fostering the taste for and encouraging the production of ideal sculpture for households and museums, and promoting the decoration of public and other buildings, squares and parks with sculpture of a high class; that it has promoted and fostered many exhibitions of outstanding sculpture throughout the United States; that its more than 300 members include most of the distinguished sculptors in the United States; that the trustee under the will has not been a party and was not a party to the 1933 case; that if the plaintiff is permitted to expend moneys from the fund to erect and maintain a building as described in the complaint, the intent of the testator may be defeated; that sculptors as a class will be deprived of participation in the erection of "enduring statutary and monuments" in accordance with the will to their professional and financial detriment; that if the moneys of the fund are used for the purpose of erecting the building described in the complaint, a precedent will be established which will have the effect of encouraging the erection of similar buildings or other structures in lieu of statuary and like memorials provided for in the wills of testators to the detriment of sculptors as a class; that the diversion of the fund may have the effect of making testators unwilling or reluctant to make bequests or set up trusts for or to charitable and educational institutions for fear that such bequests and trusts will not be used in the manner intended by the testators; and that the petitioner, its members and sculptors as a class have a consequential interest in the subject matter of the

proceeding and that in view of the wide public interest in the matter, petitioner's participation in the proceeding will tend to aid the court in doing equity in the determination of the question raised by the complaint. Petitioner asks that it be given leave to intervene as a party defendant and that it be granted such relief in the premises as equity may require. In answers the plaintiff and the Attorney General outlined various grounds for denying the petition for leave to intervene. The chancellor entered an order that the amended petition for leave to intervene be denied. Petitioner, appealing, prays that the order be reversed and that the cause be remanded with directions to permit it to intervene and participate in the hearing.

■ The petitioner insists that the general rule that the Attorney General has exclusive jurisdiction to enforce and construe charitable trusts, does not apply under the circumstances of the instant case. It says that those opposing its application for leave to intervene confuse the right of an individual to institute an action to sustain a charitable trust and his right to intervene in an action already instituted by which diversion of a charitable trust is attempted. The authorities cited do not support the distinction asserted by the petitioner. The case of People ex rel. Courtney v. Wilson, 327 Ill. App. 231, recognizes the rule that no individual seeking purely personal gains has any right in a suit involving the enforcement of a charitable trust. The court said (page 243):

"The authorities are in accord that the right of the people of the State, speaking through their duly authorized officials, the state's attorney or the attorney general, is exclusive, and that having this right and duty, their representative has the right to control the case. Hesing v. Attorney General, 104 Ill. 292; Stowell v. Prentiss, 323 Ill. 309. This doctrine is so firmly embedded in the law of this State that the Supreme Court has not only refused to permit anyone other

478

than the authorized representatives of the people to appear in court to enforce a charitable or public trust, but has invariably gone behind the mere name or cloak of the people and dismissed a case where it has appeared that the real party in interest is some individual seeking to further a personal cause. People ex rel. Moloney v. General Elec. Ry. Co., 172 Ill. 129; Hunt v. LeGrand Roller Skating Rink Co., 143 Ill. 118."

We conclude that the rule reiterated in that case is not limited to the institution of original suits. The vexation, delay and expense caused by attempts of individuals to intervene in pending suits to enforce or construe charitable trusts is as real and as great as that resulting from the filing of such suits by individuals whose only objectives are the promotion of private interests. We are convinced that the case of Hartzell v. Hungate, 223 Ill. App. 346, cited by the petitioner, is not applicable to the facts of the instant case. There the court found that a taxpayer in the City of La Harpe had at least a contingent interest in the fund.

The petitioner maintains that it has an interest in the cause and is uniquely equipped by the character of its membership and its half-century experience in the field of sculpture to render necessary assistance to the court to enable it to arrive at a just determination. The sole question is whether a memorial building different from the one authorized by the 1933 decree may be built at a slightly different location than originally authorized. In the determination of this question the National Sculpture Society has no interest and cannot be affected by the result. Neither the Society nor any of its members has any contractual relationship with or rights against the Art Institute as trustee of the fund. The mere hope of a commission is so remote as to be inconsequential. The beneficiaries of the charitable trust set up by the will are the people of the State of Illinois generally, not the sculptors who may be

479

commissioned to erect statuary and not the architects and builders who may be employed to erect a memorial building. The Attorney General is vested with the right and duty to protect the people's interests in the enforcement of charitable trusts. The petitioner cannot contribute to the protection of the public interest in the question of whether one building or another be erected and whether the building should be located just east or just west of the Illinois Central right of way.

The 1933 decree in which the then Attorney General was the defendant, posed the question whether the word "monument" in the will means and includes a memorial building and the further question whether the building described in that complaint constituted a memorial building within the meaning of the will. The decree decided that the word "monument" includes a memorial building and that the trustees of the Art Institute, in the exercise of their discretion under the will as construed, may use the moneys of the fund in the erection and maintenance of statuary and memorial buildings or other forms of monuments. That building not having been erected and the trustees now desiring to erect a building of a slightly different design in a slightly different location, presented this changed program to the Circuit Court and asked that court to resolve the doubt as to whether the use of the funds for a memorial building to Mr. Ferguson was limited to the building described in the decree. We are satisfied that the chancellor was right in deciding that the petitioner should not be permitted to intervene for the purpose of setting aside the 1933 decree.

 The petitioner asserts that the present action is in reality for the modification and extension of the 1933 decree and in the nature of a complaint for review. The action is not one in the nature of a complaint for review. Bills of review fall into three categories into none of which the present action can be placed: (a) bills to review errors appearing on the face of the

decree; (b) bills based upon newly discovered evidence; and (c) bills based upon allegations of fraud in the obtaining of the original decree. The instant case seeks the court's approval on the decision of the trustees to erect a building of a slightly different design and in a slightly different location than the building authorized in the 1933 decree.

Finally, petitioner maintains that there is a serious question as to whether there is not a necessary party lacking, namely, the Northern Trust Company. The latter is the residuary trustee under the will, which directs that the trustee shall keep intact a permanent trust fund of not less than $1,000,000 and shall, after the payment of certain bequests, annually pay the entire net income arising therefrom to the Art Institute, to be held as the B. F. Ferguson Monument Fund. When the income payments have been made to the Art Institute, the obligations and duties of the trust company with respect thereto are at an end. The will provides that the income received by the Art Institute shall be held by it as the B. F. Ferguson Monument Fund and shall be entirely and exclusively used and expended by it under the directions of its Board of Trustees in the erection and maintenance of enduring statuary and monuments. The testamentary trustee is not a necessary party to a suit to enforce the proper use of the funds and it was not necessary that it be made a party.

For the reasons stated the order of the Circuit Court of Cook County is affirmed.

Order affirmed.

FRIEND, P. J. and NIEMEYER, J., concur.