ROBERT FUNK *et al.*, Plaintiffs-Appellants, *v.* THE LIBRARY BOARD OF THE REDDICK'S LIBRARY *et al.*, Defendants-Appellees.

Third District   No. 75-284

Opinion filed November 30, 1976.

William N. Anthony, of Chicago, for appellants.

William J. Scott, Attorney General, of Chicago, and Joseph Lanuti, of Ottawa (Steven R. Swofford, Assistant Attorney General, of counsel), for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from an order of the Circuit Court of La Salle County dismissing a two-count complaint which sought to have certain dispositions made as to the William Reddick mansion.

Before devoting our attention to the issues raised in this appeal we deem it necessary to first delve into the history of the city of Ottawa and more particularly into the life of one of its colorful and prominent citizens, namely, William Reddick.

William Reddick, born in Ireland, arrived in La Salle County when 23 years of age. For the next 50 years he busily engaged himself in farming,

politics, business and civic affairs. In 1856 he contracted for the design and construction of a palatial residence which was completed in 1858. This imposing structure, built of stone and brick and classified as being of the Italiante style, is still at the corner of Lafayette and Columbus Streets in the City of Ottawa.

William Reddick died on March 8, 1885. After being tested in court the will of William Reddick was admitted in probate. The will made a number of bequests and devises; however, the provisions of that document which are pertinent to this appeal are as follows:

> "Seventeenth, I am desirous that a good Public Library and Reading-Room shall be established and maintained in the city of Ottawa, which said Library and Reading Room Shall under proper rules and regulations, ever be open to the public.

> I therefore give and devise unto my executor herein named, the following described real estate. Viz: The South ten feet of Lot Six (6), and all of lots Seven (7), ten (10) and eleven (11), and twelve (12), all in Block number sixty Six (66) In State's Addition to the city of Ottawa. and the appurtenances thereunto belonging.

> Reserving however unto the Said Elizabeth Burrier Funk Reddick and unto the Said Mary ODonnell the use and occupation of said premises, for the space of one year next succeeding my death.

> To have and to hold the said premises unto my said Executor. In Trust nevertheless to be by him conveyed as hereinafter directed.

> And I direct my said Executor, as soon as the city council of the City of Ottawa, shall first organize and establish a Public Library and Reading Room, and appoint a board Directors in accordance with the provisions of the Statute, and of an act of the general assembly of the State of Illinois. Approved March 7th, 1873. Entitled 'An Act to authorize cities, incorporated town, such Townships to establish and maintain free Public libraries and reading rooms,' to execute and deliver a proper deed conveying the said real estate last described to the Said board of directors; to be by said board used for a public library and reading room, said public library and reading room to be in my dwelling house and Said premises, and be known and called by the name of 'Reddick's Library'

> And I hereby request the city council of the city of Ottawa, as soon as possible after my death to establish a public library and reading room, and to create a board of directors under the provisions of said act.

> Eighteenth, All the rest residue and remainder of my estate of whatever name and nature however known and described, and

wherever situated, I hereby give devise and bequeath unto my executor, herein after named,

In trust to be by him converted into money, and when converted into money said money to be paid over to the Board of Directors, to be established and created by the City Council of the City of Ottawa, under the act of the general assembly in relation to 'libraries' heretofore mentioned, as soon as said board shall be duly appointed and created according to law."

The real property described in the 17th clause of the will is that realty upon which the William Reddick mansion was and is to this day located.

On April 7, 1885, the city of Ottawa passed an ordinance establishing a library and the mayor appointed a board of directors. Pursuant to clause 17 of the will the executor executed and delivered deeds to the library board of directors for that realty upon which the mansion was located. In 1887 the library board took possession of the property and on September 19, 1888, the library was opened to the public and continuously remained open to the public until on or about February 2, 1975. The library board having determined that the mansion had become obsolete for library purposes and having further determined that it was unsafe and presented a fire hazard, passed an ordinance on January 25, 1975, for the sale of the real estate and the mansion located thereon.

On April 3, 1975, an action was brought against the Library Board of Reddick's Library by the filing of a two-count complaint. In Count I a number of individuals claiming to be heirs of William Reddick and Elizabeth Burrier Funk Reddick (who shall hereinafter be referred to as "plaintiff heirs" even though this status is disputed) alleged that the Reddick will contemplated the use of the property for a trust purpose, that the same was no longer being so used and hence the trust was ended and by operation of law title to the property should vest in the plaintiff heirs.

As previously stated, the trial court dismissed Count I and Count II which we will later discuss. Several issues are raised by the plaintiff heirs; however, we deem the paramount issue is whether or not a fee simple title to the Reddick Mansion property was acquired by the directors of the library board from the executor of the estate of William Reddick.

In examining the record we find the term "right of re-entry or reverter" used by counsel for the plaintiff heirs; however, it further appears from the record that counsel for the plaintiff heirs abandoned any theory based on a right of re-entry or reverter. If, however, they have not abandoned such a theory then we hold it to be of no avail. (See Ill. Rev. Stat. 1975, ch. 30, pars. 37c and 37f.1.) It is clear that the plaintiff heirs are contending that the library board was not conveyed a fee simple interest in the

Reddick Mansion property and therefore when it was no longer used as a library, title vested in them by right of reversion. With this contention we do not agree. A careful reading of the 17th clause of the Reddick will negates this contention. The testator stated, "I am desirous that a good public library and reading room shall be established and maintained in the city of Ottawa, which said Library and reading room shall under proper rules and regulation, ever be open to the public. * * *" The testator further directed the execution and delivery of a proper deed conveying the real estate to library board of directors. Nowhere in the clause are there any words which in any way could be construed or interpreted as creating conditions, a right of re-entry, a right of reverter or the right of reversion. The instant case is not unlike the case of *Board of Education v. City of Rockford* (1939), 372 Ill. 442, 24 N.E.2d 366. In the *Rockford* case a deed was involved which conveyed lots to the city for the use of the inhabitants of School District No. Two in said city. A school was built on the real estate conveyed and used from 1856 through the year 1936, when its school usage was discontinued. No other use was provided for in the deed. As in the instant case heirs of the grantors claimed that the trust created had failed and therefore the land belonged to them. Our supreme court held that the deed contained no clause or condition pertaining to reverter nor any clause or condition which could be construed as a condition subsequent and consequently the land did not revert to the heirs. See also *City of Aurora v. Young Men's Christian Association* (1956), 9 Ill. 2d 286, 137 N.E.2d 347.

We are also mindful that clause 18 of the Reddick will made the library board the residuary beneficiary of anything not specifically bequeathed or devised. This clause covered any remaining interest that the testator William Reddick could or might have retained by prior clauses in his will including clause 17. We do not believe that the testator retained any interest in the realty disposed of by clause 17 of his will, but if such had occurred it was disposed of by his residuary clause which stated, "All the rest, residue, and remainder of my estate of *whatever name and nature however known and described* * * * I hereby give devise and bequeath * * * the Board of Directors * * *." (Emphasis added.)

We further fail to find in the will of William Reddick any intent that a library should always, continuously and perpetually be housed in the Reddick Mansion. That he wanted in the City of Ottawa a good public library and reading room ever open to the public is abundantly clear; however, there was no expression that his mansion was to be utilized as a library forever. From the record we note that a new library in the city of Ottawa is in operation at a location other than that of the Reddick Mansion and the new building is known as "Reddick's Library."

■■ It is our determination that the library board acquired a fee simple title to the real estate conveyed to them by virtue of the seventeenth clause of the last will of William Reddick.

An issue was also raised as to whether the plaintiff heirs are in fact the heirs of William Reddick and his wife. Having determined that a fee simple interest was conveyed to the Library Board we need not address our attention to this issue, since regardless of their status no reversion of any interest in the Reddick Mansion realty will vest in them.

Count II of the complaint filed against the library board was brought by certain citizens of Ottawa (hereinafter referred to as "plaintiff citizens") and by a class action suit they ask that the Reddick Mansion be preserved and that the cy pres doctrine be applied so that a community use for the mansion can be determined by the court.

■■ The trial court held that the proper party to bring such an action as is sought in Count II is the Attorney General of the State of Illinois. With this ruling we are in full accord. See *Stoner Manufacturing Corp. v. Young Men's Christian Association* (1958), 13 Ill. 2d 162, 148 N.E.2d 441; *Art Institute v. Castle* (1956), 9 Ill. App. 2d 473, 133 N.E.2d 748; *Kolin v. Leitch* (1951), 343 Ill. App. 622, 99 N.E.2d 685.

The Attorney General was granted leave to intervene in the instant case and it is the Attorney General's contention that clause 17 of William Reddick's will did not place the Reddick Mansion property in trust and that such a trust is not to be implied. With this contention we agree. See *McDonough County Orphanage v. Burnhart* (1955), 5 Ill. 2d 230, 125 N.E.2d 625; *Grear v. Sifford* (1937), 289 Ill. App. 450, 7 N.E.2d 371.

■■ In their reply brief plaintiffs criticize the Attorney General for not taking any action to preserve the Reddick Mansion as a landmark. Such criticism is unwarranted since the mansion is not the subject of any charitable trust but is vested in fee simple with the library board. Since no charitable trust is *in esse* the Attorney General has no standing to take any action.

For the reasons set forth the judgment of the Circuit Court of La Salle County is affirmed.

Judgment affirmed.

STOUDER, P. J., and STENGEL, J., concur.