P. A. WHITE, Trustee, Plaintiff in Error, *vs.* L. J. STEVENS *et al.* Defendants in Error.

*Opinion filed June 22, 1927—Rehearing denied October 7, 1927.*

1. CORPORATIONS—*when services rendered by stockholders are proper charge against stock subscription.* Where the promoter of a hotel corporation contracts to pay certain persons a commission for services rendered in purchasing furniture and equipment for the hotel, and the hotel company after incorporation, with the promoter as its president, accepts and uses the furniture and equipment, it must be regarded as having ratified the contract to pay the commission to the purchasing agents, and where said agents have taken unpaid stock in the company by assignment from the promoter it may charge the amount of commission contracted for as part payment for the stock, where the contract was not unfair to the company and the commission not unreasonable.

2. SAME—*contracts of corporations with stockholders and between corporations having common directors are valid—burden of proof.* A director or stockholder may deal with the corporation of which he is a member provided he acts fairly and for the interest of the company; and corporations having one or more directors in common may contract with each other if the contract is fair and reasonable, and the burden is on the party attacking such contract to prove its unfairness.

WRIT OF ERROR to the Second Division of the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding.

LEVINSON, REIN & TUCKER, (THEODORE E. REIN, CALMON R. GOLDER, and JOHN C. TUCKER, of counsel,) for plaintiff in error.

CASSELS, POTTER & BENTLEY, (EDWIN H. CASSELS, and BARRY GILBERT, of counsel,) for defendants in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

The trustee in bankruptcy of the East Ohio Hotel Company, an Ohio corporation, filed a bill in equity against defendants in error to recover an alleged unpaid balance of subscription for 500 shares of stock of the bankrupt corporation. The superior court of Cook county, after a hearing before the chancellor, dismissed the bill for want of equity, and on appeal to the Appellate Court by the trustee that court affirmed the decree. The case comes to this court upon petition for *certiorari.*

The 500 shares of stock were subscribed for by David Olmsted and were subsequently transferred and issued to L. J. Stevens, one of the defendants to the bill, as agent or trustee for other defendants. The defendants to the bill were a group of corporations and co-partnerships closely inter-related and co-operating together. H. L. Stevens & Co. is a corporation engaged in the promotion, building, furnishing and operation of hotels in various parts of the United States. It was affiliated with and controlled two other corporations and one or two companies which were not incorporated. David Olmsted held a qualifying share of stock in and was a director of Stevens & Co., and through his promotional services hotels had been established in different cities in Ohio and other States. Olmsted would examine and select the location for the hotel,

326–34

secure a long-term lease to himself from the owner of the fee, and another person who represented Stevens & Co. would follow up and procure a contract for the construction of the building where a building had to be erected. A corporation would be formed then to operate the hotel. The majority of the stock in the East Ohio Hotel Company was subscribed by Olmsted and three others when the corporation was organized. Olmsted's three associates were connected with some of the Stevens organizations. Olmsted's expenses in promoting a hotel corporation were paid by Stevens & Co., and that company would loan Olmsted money to pay his stock subscription. When the hotel was incorporated Olmsted assigned the lease to the corporation. After Olmsted had secured the lease for the East Ohio Hotel Company, but before that company was incorporated, he wrote to Stevens & Co. requesting that corporation to take "professional supervision of the entire furnishing and equipping of the new hotel now being built for me at Warren, Ohio." He agreed to pay Stevens & Co. for its services fifteen per cent of the cost of the furniture and equipment installed in the hotel. The commission was to be paid semi-monthly as the furniture and equipment accounts were rendered. Stevens & Co. secured from manufacturers and wholesalers at their sale prices the furniture and equipment, and the hotel was equipped at a cost of $96,606.68. Stevens & Co. paid $35,768.51 of the purchase price for the furniture and charged a commission under the contract of $14,491. The hotel corporation went into bankruptcy after being in operation for a year and a half or such matter, and the trustee filed the bill against defendants in error to recover an alleged unpaid balance for stock subscribed in the hotel company by Olmsted.

We have endeavored to set out substantially how the hotel company was promoted and incorporated and the relations of the parties, companies and corporations interested in the promotion and incorporation of the hotel company,

in the belief that it would be helpful in understanding the questions necessary to be determined. The briefs are quite voluminous and discuss many questions of corporation law, but as we view the case the real questions to be determined do not require a lengthy discussion.

Plaintiff in error raises no question that the amount of more than $35,000 paid by Stevens & Co. on the purchase price of the furniture was properly a credit on the payment of the Olmsted stock subscription. The controversy is whether the commission of approximately $14,500 paid Stevens & Co. for equipping and installing the hotel furniture was also a payment on the stock subscription and a proper charge against the hotel company. Plaintiff in error's contentions are, that the amount of the commission was a payment in services, and that it devolves upon the party claiming payment by such means to prove the services were worth the $14,500. It is also contended the Olmsted contract with Stevens & Co. was made before the hotel was incorporated, was never adopted, ratified or accepted by the hotel company after its incorporation, and that the corporation never became liable under the contract. A further contention is that Olmsted was only an instrument of Stevens & Co., and that the directors of the hotel company did not possess the disinterested character and freedom of judgment which a corporation is entitled to receive from its managers in order to bind the corporation. It is also contended by plaintiff in error that Stevens & Co. did not perform the "professional supervision" of the entire furnishing and equipment of the new hotel, and that the hotel company had no knowledge of the Olmsted contract or that Olmsted had agreed to pay Stevens & Co. a commission for furnishing the hotel. These, we believe, are the most material questions raised by plaintiff in error necessary to a determination of the case.

The contract with Stevens & Co. to furnish the hotel was made before the hotel company was incorporated, but

it was made for the hotel company's benefit. The furniture was placed in the hotel and used by the hotel company, and it received the benefit of it and became obligated for it. *Streator Telephone Co.* v. *Continental Construction Co.* 217 Ill. 577; *In re Lance Lumber Co.* 237 Fed. 357; *Pratt* v. *Oshkosh Match Co.* 89 Wis. 406.

We agree with the Appellate Court that the claim of liability of the several defendants is based largely upon their intricate and complicated relationship. The Appellate Court held that the proof did not show any fraud or unfair dealing in the transactions by which defendants in error claim the stock subscription to have been paid in full. Plaintiff in error denies that he bases his claim to recover upon a charge of fraud, and says his right to recover is based on the claim that there is a balance due on the Olmsted subscription which is inadequately represented by the performance of services by Stevens & Co. As we understand plaintiff in error's position, reduced to its last analysis, his claim to recover is based on the contention that the East Ohio Hotel Company was organized for the benefit of the Stevens organization, and that company has taken all benefits of the promotion of the hotel company and can not escape liability by the claim that the commission was earned and was worth approximately $14,500. If the acts of Stevens & Co., or those connected with it, were unfair to the hotel company we do not see how it could be other than a fraud upon that company. The mere fact that defendants in error were stockholders in or otherwise interested in the same corporation would not, *per se,* make the contract an invalid one. In *Harts* v. *Brown,* 77 Ill. 226, the court said: "We have never known it questioned that a director or stockholder may trade with, borrow from or loan money to the company of which he is a member, on the same terms and in like manner as other persons, * * * but in doing so he must act fairly and be free from all fraud and oppression, and he in so doing must act for the

interest of the company and impose no unfair or unreasonable terms." That rule has been repeatedly announced and adhered to in this and other States. Both courts below have in this case held against plaintiff in error's contention, and we think have correctly so held. It has also been repeatedly held that corporations having one or more common directors may contract with each other if the contracts are fair and reasonable. There is no presumption in such case that the contract is unfair or oppressive but the person attacking it must prove its unfairness. Without quoting or setting out the testimony, it is sufficient to say there was no testimony on behalf of plaintiff in error that the commission of Stevens & Co. was unfair, but there was affirmative proof in behalf of defendants in error that it was fair and reasonable. Stevens & Co. procured the furniture for the hotel company at prices charged by manufacturers and wholesalers and furnished it to the hotel company at the same price. The hotel company accepted and used the furniture without ever registering any complaint that there was anything objectionable about it. For approximately a year and a half the furniture was used in the hotel, and no objection was made that it was not suitable to the requirements of the hotel or that the prices paid for it were unreasonable.

Plaintiff in error makes an argument that the proof did not show that Stevens & Co. did all that the Olmsted contract required of that company. We have considered the testimony, and, without lengthening this opinion by quoting it, we think that contention is not sustained.

Neither do we think the contention of plaintiff in error that there was no affirmative proof by defendants in error that the commission paid Stevens & Co. was fair and reasonable is sustained. It was not essential that the hotel corporation should formally approve the contract after its organization. The officers of the hotel corporation, and at least some of the stockholders, knew of the perform-

ance of the contract by Stevens & Co., accepted and used the furniture and by their conduct ratified performance of the contract. The contract was made by Olmsted, who became the president of the hotel company when it was organized. He wrote the contract himself.

It is true, the transaction between the hotel company and its promoter and Stevens & Co. was not exactly according to the usual methods of transacting such matters. When the hotel company issued its stock to Olmsted, which was after Stevens & Co. had paid $35,768.51 on the purchase price of the furniture, Olmsted then transferred the stock to Stevens & Co. to secure his (Olmsted's) note. Later the stock was re-issued as fully paid up to defendant in error L. J. Stevens and the $50,300 note of Olmsted was canceled. The $35,768.51 paid by Stevens & Co. on the purchase price of the hotel furniture, the $14,491 commission paid to Stevens & Co. and $40.49 in cash paid on the settlement, were equal to the amount of the par value of the stock. The president of Stevens & Co. testified that method was adopted as a short cut or saving in the matter of book-keeping. That was not any different, as we see it, from what would have been the case if Stevens & Co. had paid the cash to Olmsted on his loan, Olmsted had paid the money to the hotel company for the stock he purchased in that company, and the money had thereafter been checked out by the hotel company to pay Stevens & Co. for the cash advancement made by it for the purchase of the hotel equipment and its commission. The relations of the hotel company and the defendants in error with each other require of a court of equity careful scrutiny to determine whether the transaction was fair and reasonable to the hotel corporation, but the most careful scrutiny fails to disclose any unfairness to or overreaching of the hotel company in the entire transaction.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*