10 N.J. Super. 234 (1950)
77 A.2d 53
CARL BRESNICK AND ANOTHER, PARTNERS, ETC., PLAINTIFFS-RESPONDENTS,
v.
FRANKLIN CAPITAL CORPORATION AND OTHERS, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 2, 1950.
Decided November 22, 1950.
*236 Before Judges JACOBS, EASTWOOD and BIGELOW.
*237 Mr. Harry Green argued the cause for the respondents.
Mr. Elmer O. Goodwin argued the cause for the appellants Franklin Capital Corporation and Franklin Mortgage and Title Insurance Company.
Mr. Milton M. Unger argued the cause for the appellant Franklin Washington Trust Company (Messrs. Milton M. and Adrian M. Unger, attorneys).
The opinion of the court was delivered by BIGELOW, J.A.D.
This is an appeal from a final judgment of the Chancery Division enjoining the Franklin Capital Corporation and its two subsidiaries from putting into effect a plan of reorganization,  using that term in a rather broad sense. The Capital Corporation owns all the capital stock of the Franklin Mortgage and Title Insurance Company and five-eighths of the common stock of the Franklin Washington Trust Company. During the past 20 years, the first two corporations have paid no dividends, and the last has paid none on its common stock. It has outstanding $500,000 of preferred stock held by the Reconstruction Finance Corporation, and can pay no common dividends until the preferred stock be retired. The plan, consummation of which has been restrained, provides that the Mortgage Company dissolve and, with the proceeds of its assets, that the Capital Corporation purchase new common stock of the Trust Company and so enable it to retire the preferred stock. The management hoped that thereupon the two surviving companies would resume the payment of dividends. The learned judge of the Chancery Division was of the opinion that what the plan proposes is in substance a merger of the Mortgage Company and the Trust Company, without authority of law, and furthermore that the plan is unfair to the Capital Corporation and inequitable. 6 N.J. Super. 579.
The business of the Mortgage Company falls into two branches, of which the minor one is insuring land titles. It has issued a large number of title policies in past years and *238 is subject thereon to a contingent liability. It also has built up a small title plant, worth perhaps $5,000. How much of an income it receives from this branch of the company's business does not appear, but there are intimations that this part of the income is inconsiderable. Part of the plan of reorganization involves the transfer of the title plant to the New Jersey Realty Title Insurance Company, and the payment to it of $25,000 in consideration whereof the New Jersey company would assume the Franklin company's liability on the title guarantees. Neither the latter company nor the Franklin Washington Trust Company would continue the title business. The New Jersey Realty Title Insurance Company is in no way connected with the Franklin Washington group. This part of the plan is not seriously attacked.
The other branch of the Mortgage Company's business consists in finding mortgage investments for insurance companies and other institutions and servicing the mortgages as agent of the investors. An important part of the reorganization plan provides for turning over this business to the Trust Company, without consideration, except that that company would buy at par all the mortgages held by the Mortgage Company and also the home office building of the Mortgage Company at a price set by an independent appraisal. Nothing is allowed for the "going concern value" or good will of the mortgage business.
The remaining assets of the Mortgage Company, as well as the consideration to be paid by the Trust Company  perhaps $750,000 in all  would be used first to satisfy liabilities of the Mortgage Company, and the balance, estimated at around $500,000, would pass on dissolution of the Mortgage Company to the Capital Corporation as sole stockholder. The Trust Company would then offer $500,000 of new stock to its stockholders pro rata, and the Capital Corporation would take its quota, $312,500, and as much of the rest of the issue as might be unsubscribed for. Lastly, the Trust Company would retire its preferred stock and so reach a position in which it would be allowed to pay dividends.
*239 The respondents contend that the plan which we have outlined is within the condemnation of Riker v. United Drug Co., 79 N.J. Eq. 580 (E. & A. 1912). In that suit, it appeared that the directors of the defendant, which was a corporation of New Jersey, had procured the organization of a company of the same name under the laws of Massachusetts. It was proposed that the New Jersey company would transfer all its assets to the Massachusetts company and would dissolve and that the Massachusetts company would assume the other company's debts and would pay for the property by issuing its own stock directly to the stockholders of the New Jersey company. Chief Justice Gummere said of the proposal:
"Manifestly, the prime purpose of the scheme outlined in this communication is not the winding up of the New Jersey corporation and the distribution of its assets, or the proceeds of the sale thereof, among its stockholders, but the absorption of that company by the Massachusetts corporation, the transfer not only of its assets but of its business, to that corporation, and the future carrying on of that business by the Massachusetts corporation under the name of the defendant company. The scheme, in its essence, whatever it may be in form, is not a plan for the reorganization of the New Jersey company, nor even for the winding up of its business and its dissolution within the meaning of the latter word as used by our Corporation Act, but is a scheme for its merger into or consolidation with the Massachusetts corporation."
The court applied the rule that recourse may not be had to statutory procedures in order to accomplish illegal or unauthorized corporate purposes. It characterized the scheme as a fraud on our statute, and held that it invaded the rights of the complainants as minority stockholders of the New Jersey company. Unless legal authority to do so is reserved to it, a corporation cannot, without the consent of all its stockholders, sell or even lease its assets and business as a whole and invest the stockholders' capital in other enterprises. Kean v. Johnson, 9 N.J. Eq. 401 (Ch. 1853). That was what was unlawfully attempted and was prohibited in Riker v. United Drug Co. Assuming for the moment that the plan now under review is in essence the same as the one that was the subject of the Riker suit, we may observe that there are here no non-assenting stockholders; no one's rights are invaded. The *240 complainants have stock in neither the Mortgage Company nor the Trust Company, but only in the Capital Corporation. That corporation, in addition to the shares of the other two companies, owns valuable real estate and a sizeable portfolio of "marketable stocks." From the plaintiffs' standpoint, the plan proposes that their company dispose of its investment in the Mortgage Company and increase its investment in the Trust Company. There is no illegality, or lack of authority here, and no necessity for the unanimous approval of the Capital Corporation's stockholders.
We have not considered how P.L. 1931, c. 288, now R.S. 14:3-5 bears on the present controversy. See R.S. 14:2-8 and 17:18-1. See also Berger v. U.S. Steel Corp., 63 N.J. Eq. 809, at 825 (E. & A. 1902) and Allen v. Francisco Sugar Co., 92 N.J. Eq. 431 (E. & A. 1921).
The differences between the scheme condemned in the Riker case and the plan now before us must not, however, be ignored. The Franklin Washington Trust Company is not buying all the assets of the Mortgage Company, and is assuming none of its debts; the Mortgage Company's assets or their proceeds are being distributed to its sole stockholder, the Capital Corporation. No de facto merger is proposed. Cf. Light v. National Dyeing, etc., Co., 140 N.J. Eq. 506 (Ch. 1947); Butler v. New Keystone Copper Co., 93 A. 380 (Del. 1915). We are satisfied that the reorganization plan is not illegal, and turn to the question whether it is unfair.
In most litigation in which corporate action is assailed as inequitable, the specific charge is that the majority stockholder are using their power in a manner unfair to minority stockholders. But in the present instance, the complainants, in behalf of the Capital company, assert that that corporation, as the controlling stockholder of the Trust Company, is acting with too much liberality toward the minority stockholders of the Trust Company. That is to say, that the Capital Corporation is causing the good will or organization value which attaches to the mortgage servicing business now carried on by the Mortgage Company, to be transferred to the Trust *241 Company without receiving any value in return. Thereby, it is charged, the minority stockholders of the Trust Company, with three-eighths of its stock, will receive as a gift three-eighths of the good will. It is true, of course, that the plaintiffs are minority stockholders of the Capital Corporation, but their interest in the matter in controversy is identical with that of the majority. They do not allege that they are discriminated against, or are in any way oppressed.
The plaintiffs urged, and the trial Division applied, the rule that transactions between corporations having common directors should be scrutinized closely. Robotham v. Prudential Insurance Co., 64 N.J. Eq. 673 (Ch. 1903); Pierce v. Old Dominion Copper Co., 67 N.J. Eq. 399 (Ch. 1904). The rule grows from the fact that such directors have a divided allegiance and may be tempted to disregard the welfare of one or other of the corporations. It has little relevancy to the instant case. The Capital Corporation owns all the stock of the Mortgage Company and chooses all the directors of that company. In transactions between the two companies, there is no divided loyalty, for we may assume the directors are concerned primarily to serve the company that appoints them and that owns all the stock of the other. The Capital Corporation has power, by virtue of holding a majority of the stock, to appoint also all the directors of the Trust Company. There are only two directors common to these two companies. If the reorganization plan was under attack by minority stockholders of the Trust Company, we would hold the companies to strict proof that the minority were not being treated unfairly. But when the corporation having the control is said to have been overreached, the circumstance that two of the men whom it put on the Trust Company's board, are also members of its own directorate, seems inconsequential.
The chairman of the board of the Capital Corporation owns individually some shares in the Trust Company but this fact is not even mentioned by plaintiffs. And in fact the chairman holds 17 per cent of the outstanding stock *242 of the Capital Corporation and only one per cent of the Trust Company stock, so that his personal interest is served by a bargain that favors the Capital Corporation rather than the Trust Company. The attack on the transaction is not founded on any specific charge of bad faith. But rather it is the charge that the management of the Capital Corporation is stupid. "Questions of policy of management, of expediency of contracts or action, of adequacy of consideration not grossly disproportionate, of lawful appropriation of corporate funds to advance corporate interest, are left solely to the honest decision of the directors if their powers are without limitation and free from restraint. To hold otherwise would be to substitute the judgment and discretion of others in the place of those determined on by the scheme of incorporation." Ellerman v. Chicago Junction Rys., etc., Co., 49 N.J. Eq. 217, at 232 (Ch. 1891), followed in numerous cases of which one of the latest is Grubman v. American General Corp., 130 N.J. Eq. 607 (E. & A. 1941). "The law does not require infallibility or the impossibility of error or mistake in directors; it requires that they shall act as reasonable men and in good faith toward their stockholders." Casson v. Bosman, 137 N.J. Eq. 532 (E. & A. 1946). See also Hodge v. Cuba Co., 142 N.J. Eq. 340 (Ch. 1948). But if, indeed, the directors propose to give away, without any compensating advantage to their company, valuable assets, we have a breach of trust.
The original impetus for retiring the preferred stock of the Trust Company came from officials of the Federal Reserve System. From this it is argued that the directors of the Capital Corporation shirked their responsibility and made no decision themselves as to the wisdom of such action. The conclusion is not justified by the premise. The directors formally resolved that the retirement of the stock  and the whole plan  was for the best interest of the Capital Corporation and its stockholders, and there is no reason to doubt that they so believed. We assume that the advice given by the Federal Reserve officials was given much weight by the directors, but *243 we perceive no impropriety in that circumstance. Indeed, it clearly appears that the retirement of the Trust Company's preferred stock would greatly benefit the Capital Corporation, and that the only practical way of accomplishing this end is to use the assets of the Mortgage Company. There is no suggestion in the case that the Trust Company could pay, or would be permitted by the Banking Department and other supervisory agencies to pay, for good will or going concern value. The modification urged by plaintiffs to the plan proposed by the management, is the sale of the capital stock of the Mortgage Company to an outside interest. Plaintiffs profess themselves willing to pay for the stock $50,000 more than the Capital Corporation will realize through dissolution. That would be around $550,000. Since the Capital Corporation has five-eighths of the Trust Company stock, the higher offer would yield net to the Capital Corporation $18,500 more than the plan which was adopted. But it seems that the Trust Company is already carrying on a mortgage business of the same sort conducted by the Mortgage Company. The defendants say that the enlargement of the Trust Company's mortgage department which will result from acquiring the other company's business, will produce economies and a larger profit, both in dollars and in percentage of receipts, and make the plan which they have proposed more advantageous to the Capital Corporation than would be the sale to someone else, even at the higher figure. That argument is at least plausible; we cannot say that it is unsound.
The learned judge of the Chancery Division thought that competitive bids should have been sought for the assets of the Mortgage Company. But the law does not require this course and discretion in the premises is vested in the directors. The learned judge found that the plaintiffs' offer showed the inadequacy of the consideration to be paid by the Trust Company and "hence, unfairness is amply demonstrated." We disagree. There is not the slightest proof of "gross inadequacy" of price. The business judgment of the directors of the Capital Corporation in this whole matter appears to have been a reasonable one and not at all tainted with inequity or unfairness.
*244 Furthermore, the stockholders of the Capital Corporation approved the action of their directors by a vote of 327,324 shares to 41,413. The notice of the meeting and the accompanying documents set forth the plan fully and gave all the information that the most exacting critic could desire. There is not even a hint in the case that fraud or bad faith motivated the majority stockholders; the minority is not oppressed or wronged. In such a situation, said Vice-Chancellor Backes in Bingham v. Savings Investment & Trust Co., 101 N.J. Eq. 413 (Ch. 1927), "a court of equity ought not to interfere. In guarding the rights of the minority, care should be taken not to injure the interests of the majority." Affirming the dismissal of the bill in that suit, the Court of Errors and Appeals, speaking through Chief Justice Gummere, said, "It cannot reasonably be expected that the court is impressed with the belief that the complainants and their fellow-stockholders will suffer any substantial injury by the consummation of the scheme, and that unless it appears that the proposed action is without legal authority, this court should see to it that this overwhelming majority of shareholders are not deprived of their rights by the very few dissentients." 102 N.J. Eq. 302 (1928).
The power of stockholders specifically to authorize or ratify contracts, such as the one here contemplated, is not open to question in the absence of fraud or oppression. Helfman v. American Light & Traction Co., 121 N.J. Eq. 1, at 14 (Ch. 1936). Our law confides to a majority of the stockholders and to their appointees, the directors, power to determine what action shall be taken by the corporation, within the scope of its charter. Gifford v. N.J. Railroad Co., 10 N.J. Eq. 171 (Ch. 1854). A court has no authority to interfere except to prevent ultra vires action, breach of trust or fraud. No such elements appear in the case before us.
The judgment enjoining the consummation of the plan of reorganization will be set aside, and judgment for the defendants entered with costs on the appeal as well as in the Chancery Division.