Rhoda Hecht Rubel, May Friend Goodman, Alene W. Friend, Leon S. Newton, and Janet F. Newton, and Alexander F. Newton, Minors, by Leon S. Newton, their Father and Next Friend, Appellants, v. Sylvia Friend, Michael Reese Hospital of Chicago, University of Chicago, The Northern Trust Company, as Sole Surviving Trustee under Last Will and Testament of Emanuel Friend, Deceased, and Ivan A. Elliott, Attorney General of State of Illinois, Appellees.

Gen. No. 45,323.

Opinion filed September 26, 1951. Rehearing denied October 11, 1951. Released for publication November 15, 1951.

MORGAN, SALTER & SELLERY, and MARTIN BELL, all of Chicago, for appellants; SAMUEL MORGAN, of Chicago, of counsel.

Ivan A. Elliott, Attorney General, of Springfield, for appellees; Gottlieb, Schwartz & Friedman, for certain appellee; D'Ancona, Pflaum, Wyatt & Riskind, of Chicago, for certain other appellee; Maurice A. Riskind, Edgar Bernhard, Jacob M. Shapiro, Harry R. Begley, and Robert J. Burdett, all of Chicago of counsel.

Mr. Justice Feinberg delivered the opinion of the court.

Plaintiffs filed their complaint to set aside a decree entered on January 12, 1948, in the circuit court of Cook county, and for the termination of a charitable trust created by the last will and testament of Emanuel Friend, deceased. Upon the hearing of a motion to dismiss the amended complaint, an order was entered dismissing it for want of equity, and entering judgment for costs against plaintiffs, from which order this appeal is taken.

The motion to dismiss set up as one of the grounds the decree of January 12, 1948, entered in the suit of the Northern Trust Company, as sole surviving trustee under the last will and testament of *Emanuel Friend, deceased, v. Michael Reese Hospital of Chicago, the University of Chicago and George F. Barrett as Attorney General,* and that said decree was *res adjudicata* and controlling against the claims made in the amended complaint. A copy of the decree was attached to said motion, and there was upon the hearing no denial of the entry of said decree. That suit was one to construe the will and for directions to the trustee.

The questions presented upon this appeal are: (1) Did the specific bequest in the 15th clause of the will referred to, creating the trust estate in question, lapse because of the failure to comply with the direction for performance within the period of 10 years following the death of the testator? (2) Does the language of the 15th clause impose a condition precedent not complied

451

with, resulting in the lapse of said bequest? (3) Is the decree *res adjudicata* against the plaintiffs, since admittedly they were not parties to the suit in which the decree was entered?

It appears from the amended complaint that the testator died July 19, 1938, and the will in question, dated February 15, 1934, was admitted to probate on September 7, 1938. The pertinent provisions of clause 15 of said will, over which this controversy arises, are:

"FIFTEENTH: I GIVE, DEVISE and BEQUEATH all the rest, residue and remainder of my estate, of every kind, nature and description whatsoever, . . . which I may own or to which I may be entitled at the time of my death, to my said brother, SOLOMON B. FRIEND, and said THE NORTHERN TRUST COMPANY, as Trustees, upon the trusts and for the uses and purposes hereinafter limited and defined *and subject to the powers, provisos and provisions hereinafter contained and expressed.*

"(a) I DIRECT my said Trustees, *within ten (10) years after the date of my death,* to use all of said residuary estate and any and all additions thereto for the purpose of establishing and maintaining, in the City of Chicago, Illinois, a charitable home for convalescents, . . . . *Until the establishment of said charitable home for convalescents, the income from said residuary estate and all additions thereto, shall be accumulated and added to and become a part of the principal of said residuary estate,* all of which said residuary estate shall be used for the purpose of establishing and maintaining said charitable home for convalescents, all as hereinbefore provided.

"(b) Subject as herein expressly provided, I DIRECT my said Trustees to offer the control and management of said charitable home for convalescents to the MICHAEL REESE HOSPITAL OF CHICAGO, upon the express understanding that said charitable home for convales-

cents shall always be operated as a separate and distinct charitable institution within the City of Chicago, Illinois, having its own separate and distinct identity, and that said institution shall not at any time be merged or treated as an integral part of said MICHAEL REESE HOSPITAL OF CHICAGO. . . . In the event said MICHAEL REESE HOSPITAL OF CHICAGO shall not desire to control and manage said charitable home for convalescents upon such terms, then I direct my said Trustees to offer the control and management of said charitable home for convalescents upon like terms to the ALBERT MERRITT BILLINGS HOSPITAL now maintained by the University of Chicago. In the further event that the ALBERT MERRITT BILLINGS HOSPITAL shall not desire to control and manage said charitable home for convalescents, upon such terms, then I direct my said Trustees to offer the control and management of said charitable home for convalescents upon like terms *to some other hospital of good repute and standing in the City of Chicago, Illinois,* and in the further event my said Trustees shall not find a hospital of good repute and standing in the City of Chicago, Illinois, willing to accept the control and management of said charitable home for convalescents upon the terms hereinbefore set forth, then I direct my said Trustees to offer the control and management of said charitable home for convalescents upon like terms *to some other charitable institution or charitable foundation of good repute and standing in the City of Chicago, Illinois.*

" . . .

"(c) I FURTHER DIRECT *that said charitable home for convalescents shall be conducted and operated purely and exclusively, as a charity and for charitable purposes in the City of Chicago, Illinois, for the benefit of worthy and deserving poor persons,* but leave the

453

particular regulation of admission thereto to the managing institution, *but it is my wish that the same shall not in any sense be a sectarian institution. . . .*

"(d) *My said Trustees shall, within ten (10) years after the date of my death,* procure suitable ground at such location in the City of Chicago, as to them and the Board of Directors of the managing institution shall seem best, and said Trustees shall erect such building or buildings thereon as shall be approved by my said Trustees and the Board of Directors of the managing institution.

" . . .

"(h) Further, anything hereinbefore expressly contained to the contrary notwithstanding, in the event that the control and management of said convalescent home shall not be undertaken and shall not be in any managing institution as hereinbefore set forth, (the term 'managing institution' as herein used, referring to the hospital, institution or foundation undertaking the control and management of said convalescent home) then and in such event, any and all references herein contained in this, my Last Will and Testament, to such managing institution, or to a managing institution, may be disregarded to the same extent and in the same manner as if such references had not appeared in this, my Last Will and Testament." (Italics ours.)

There is no provision in the will for reverter, in the event of its nonexecution within 10 years. The will contained broad powers to the trustees with respect to the investment and reinvestment of the trust estate.

We shall first discuss the question raised by plaintiffs that the decree referred to is not *res adjudicata.* The authority for raising the question of *res adjudicata* by the motion to dismiss and the copy of the decree attached to said motion, where the same does not appear upon the face of the complaint, may be found in

section 48 (e) of the Civil Practice Act (Ill. Rev. Stat. 1949, ch. 110, par. 172) [Jones Ill. Stats. Ann. 104.048].

Plaintiffs urge that they are not concluded by said decree because they were not parties to the proceeding. Clearly, if the trust estate created by clause 15 is devoted unconditionally and exclusively to a general public charity and not limited to a specific institution, then these plaintiffs would have no interest in the trust estate and were not necessary parties. Especially must this be true, where the entire residuary estate is devoted to the public charity with no provision for reverter to the heirs. There is no language in the will which would indicate that the testator had any intention to provide for such contingency as the nonexecution of the trust within 10 years.

In *Village of Hinsdale v. Chicago City Missionary Society*, 375 Ill. 220, at p. 236, the court held:

"There is no provision in the deed that any part of the property will revert to the heirs upon breach of condition, nor does the deed provide for a forfeiture or reentry. Consequently, the right of reentry does not exist and there is no reverter in the grantor or his heirs. *(Board of Education v. City of Rockford, supra; Rockford Trust Co. v. Moon,* 370 Ill. 250.)*"

In *First Nat. Bank of Chicago v. Elliott,* 406 Ill. 44, at p. 58, the court said:

"It will be observed that the testator made no bequest or devise to his heirs-at-law, or any other beneficiaries, in the event the two named sisterhoods declined to accept the obligation which the testator sought to impose upon them. The will exhibits exceedingly careful draftmanship and the fact that this contingency was not provided for strengthens the conclusion that the will expresses a general charitable intent, as opposed to a specific, or particular, charitable intent."

In *People ex rel. Courtney v. Wilson*, 327 Ill. App. 231, at p. 243, upon the question as to right of heirs in a proceeding involving a public charity, the court held:

"The authorities are in accord that the right of the people of the State, speaking through their duly authorized officials, the state's attorney or the attorney general, is exclusive, and that having this right and duty, their representative has the right to control the case."

In *Attorney General v. Newberry Library*, 150 Ill. 229, at p. 236, the court held:

"Where the public is interested in the execution of a trust, the Attorney General is the proper party, either plaintiff or defendant, as the representative of the public."

The Attorney General was a party to the proceeding, representing the interests of the public generally.

The decree found that the court had jurisdiction of the parties and the subject matter; that the sole surviving trustee under said will offered in writing to Michael Reese Hospital of Chicago, one of the defendants, the control and management of said charitable home for convalescents, pursuant and subject to the provisions of said will and said written offer, which offer was accepted in writing by said hospital; that the offer and acceptance are ratified, confirmed and approved in all respects; that the trustee, without any fault on its part, was delayed in the execution of the provisions of clause 15, by reason of a suit instituted on September 5, 1939, against said trustee and the beneficiaries under said will, by the divorced former wife of testator, who sought to establish her right to renounce the will and to participate in the distribution of the estate; that the suit, after appeal to the Appellate Court and Supreme Court, was finally determined ad-

versely to her on December 30, 1942,—a delay of four and one-half years following the death of the testator; that when the trustee received the residuary estate from the executor of said will, the United States was engaged in World War II; that building materials and construction were restricted by order of the United States War Production Board to conserve critical materials; that such restrictions virtually continued until June 30, 1947, which interfered with the execution of the duties imposed upon the trustee by said charitable trust; that the cost of materials and construction, following the death of the testator and at the time of the filing of the suit in which the decree was entered, increased to such an extent as to prohibit the expenditure of money for the purpose of the trust, without defeating or substantially impairing the purposes of said trust; that in order to carry out the purposes of said trust and in conformity with the intentions of the testator, said provision of the trust should be modified to provide further time for procuring the ground and the construction of the building required for the establishment of a home for convalescents, and directed that said time should be extended for a period of 10 years from the date of the entry of the decree. There was no appeal from this decree.

██ We think that the intention of the testator was correctly found in said decree. It is clear to us that the testator did not intend that the charitable trust created should lapse because the trustees could not within the 10-year period exercise the powers and directions to them in clause 15, due to no fault of the trustees, as found and adjudicated in said decree. The decree is *res adjudicata* as to the proper construction of the provisions of clause 15 of the will and the intention of the testator, and is controlling in this proceeding.

██ Nor can the 10-year provision found in clause 15 be held to be a condition precedent. It will be ob-

served that the first paragraph of clause 15 directs that the bequest be subject to the powers, provisos and provisions hereinafter contained *"and expressed"* (italics ours). In none of the paragraphs which follow is the grant coupled with any proviso "expressed," which plaintiffs, in their argument, have assumed exists, and upon which they predicate their contention that the 10-year provision must be considered a condition precedent not complied with, and therefore the bequest lapses and the trust should be terminated.

In *First Nat. Bank of Chicago v. Elliott,* 406 Ill. 44, at p. 55, the court held:

"A gift for the erection and maintenance of a home for orphans and foundlings is, admittedly, a charitable gift. . . . Equity considers the general charitable purpose of a testator or donor as the substance of the devise or gift, the mode pointed out in the will or conveyance for effectuating this purpose being a mere incident of the gift."

The court there distinguished *Quimby v. Quimby,* 175 Ill. App. 367; *Chicago Daily News Fresh Air Fund v. Kerner,* 305 Ill. App. 237, and *Volunteers of America v. Peirce,* 267 Ill. 406, where it appeared there was a provision for reverter in the event of nonexecution or other contingencies. These cases are relied upon by plaintiffs. The further distinction is clearly pointed out between trusts which are devoted to a specific entity as distinguished from a general public charitable purpose.

This trust, being for a general public charitable purpose, will not be permitted to lapse or be defeated by the mere expiration of time or because there cannot be a literal compliance with its provisions. *First Nat. Bank of Chicago v. Elliott, supra.*

The order appealed from is correct and is affirmed.

*Affirmed.*

KILEY, P. J. and LEWE, J., concur.