Morris Nagel, et al., Appellants, v. Northern Illinois Gas Company, et al., Appellees.

Gen. No. 46,970.

First District, First Division.

January 7, 1957.

Released for publication February 11, 1957.

413

Sydney B. and Morris J. Wexler, and Howard Perry Kamin, all of Chicago, for plaintiffs-appellants; Morris J. Wexler, Howard Perry Kamin, and Allen Grossman, all of Chicago, of counsel.

Wilson & McIlvaine, of Chicago, and Putnam, Johnson & Alschuler, of Aurora, for Northern Illinois Gas Company; W. P. Gilbert, Charles W. Boand, George W. Thompson, of Chicago, and Sam Alschuler, of Aurora, of counsel; Max Swiren, Isham, Lincoln & Beale, and Lynch & Schaller, all of Chicago, for Commonwealth Edison Company and the individual defendants; Max Swiren, Charles A. Bane, William J. Lynch, and Myron Lieberman, all of Chicago, of counsel.

PRESIDING JUSTICE NIEMEYER delivered the opinion of the court.

Plaintiffs, the owners of 651 shares of more than 16,000,000 outstanding common shares of defendant Commonwealth Edison Company (herein called Edison), appeal from a judgment for defendants in plaintiffs' derivative action for the rescission of a contract between Edison and its subsidiary, the defendant Northern Illinois Gas Company (herein called Northern), designated their "Final Separation Contract," the restoration to Edison of assets valued in excess of $5,000,000, alleged to have been given away without consideration by Edison to Northern pursuant to the terms of the Final Separation Contract, and damages to Edison resulting from the negligence and breach of duty of the directors of Edison, defendants herein, in giving away such assets. The judgment was entered

on defendants' motions to dismiss the complaint, as amended, in which defendants assigned with other grounds for dismissal the failure to state a cause of action that Edison could enforce.

Edison was and is a public utility, supplying electricity. Prior to February 9, 1954 it supplied gas. On the latter date it transferred its gas and heating properties to Northern, a recently created corporation, and received as part consideration therefor 5,892,484 shares of Northern common stock, each share representing $10 of the actual net assets of Northern. Concurrently with the transfer it purchased 100,000 shares of Northern 5 per cent convertible preferred stock for $10,000,000 in cash to provide working capital and construction funds for Northern. Each share of the preferred stock is of the par value of $100 and convertible after January 31, 1957 into 10 shares of Northern common stock.

April 27, 1954 Northern publicly offered and sold 400,000 shares of common stock at $15.75 per share to procure additional working capital. Until this sale Northern was a wholly owned subsidiary of Edison.

August 2, 1954, pursuant to its announced intention to distribute its Northern common stock to holders of its common stock, Edison declared a dividend in kind of 656,454 shares of Northern common stock on the basis of one share of Northern for each 25 shares of Edison. The holders of Edison common stock received 422,480 shares of Northern. The remaining 233,974 shares were sold and the proceeds distributed to Edison shareholders electing to receive cash instead of stock.

January 26, 1955 Edison and Northern entered into the Final Separation Contract, reciting that Edison desired a firm understanding with Northern that certain agreements and transactions would be entered into and carried out between them before recommend-

415

ing that its board of directors authorize the distribution to its common stockholders of a number of shares of Northern common stock constituting not less than 80 per cent of the total voting power represented by the then outstanding preferred and common stock of Northern as a tax-free dividend, and accepting offers to purchase the 100,000 shares of Northern preferred stock held by Edison at $165 per share. This recital is followed by an agreement between the parties with respect to a number of intercompany matters stated in separate paragraphs in the contract.

Plaintiffs object only to two transactions: (1) The waiver by Edison of any right it might have to $96,141.64, the amount of a refund paid by the Texas-Illinois Natural Gas Pipeline Company to Northern allocable to purchases by the gas department of Edison during January 1954, Northern indemnifying and agreeing to hold Edison harmless from any claims by gas customers with respect to or by reason of such allocable portion of the refund; (2) The surrender by Edison to Northern, promptly following confirmation and acceptance of the Final Separation Contract by Northern, of 253,915 shares of Northern common stock and the canceling of such stock by Northern. At the closing market price on the date of the contract the shares later surrendered had a total market value of $5,046,560.63.

The Final Separation Contract was entered into pursuant to resolutions of the board of directors of Edison and Northern. Ten of the seventeen members of the Edison board were members of the eleven-member-board of Northern. Upon confirmation and acceptance of the contract by Northern, Edison sold 100,000 shares of Northern preferred stock and received therefor $16,500,000 on February 1, 1955. It also surrendered 253,915 shares of Northern common stock and same were canceled. On March 1, 1955 it

416

distributed as a dividend in kind 4,982,115 shares of Northern common stock to its common shareholders on the basis of three shares of Northern common stock for each ten shares of Edison common stock, thereby terminating its holding of Northern stock. On July 15, 1955 the five original plaintiffs, owners of 70 shares of Edison common stock, by letter requested that the directors and executive officers of Edison take appropriate action to procure the relief sought herein. No reply was received by plaintiffs.

Plaintiffs allege that the provisions of each paragraph of the Final Separation Contract, numbered 1 to 12 inclusive, are separate agreements entered into at various times prior to the date of the Final Separation Contract, and that in making each of these separate agreements the corporations did not take into account the benefits conferred or the detriment incurred by them in making any one or more of the other separate agreements but grouped all of the agreements for convenience in separate paragraphs in the Final Separation Contract; that Edison received no assets, rights or benefits in exchange for its waiver of any right to the refund and the surrender of the Northern common stock for cancellation, or alternatively, if the separate agreements in the Final Separation Contract are mutually dependent on each other, the net value of the assets, rights and benefits to Edison under all the agreements was less than $50,000; that in either case the waiver of any right to the refund and the surrender of the Northern common stock for cancellation were a giveaway of Edison's assets, valued in excess of $5,000,000, and are voidable by Edison as unfair, unconscionable, and an unjust enrichment of Northern; that the directors of Edison negligently sacrificed the interest of Edison and negligently permitted the waste and misappropriation of its assets by authorizing the

417

acts complained of; that these transactions are fraudulent in law as to Edison.

Edison and its directors joined in a motion to dismiss the complaint. Northern filed a separate motion. While the motions were pending, four stockholders owning a total of 324 shares of Edison common stock, and then five stockholders owning a total of 257 shares of common, were made additional parties plaintiff, making fourteen stockholders, owning 651 shares of Edison common, parties plaintiff.

Plaintiffs by leave of court amended the complaint by adding allegations intended by them to excuse application to the stockholders of Edison to take appropriate action to obtain the relief sought herein.

The motions of defendants to dismiss the complaint were ordered to stand as motions to dismiss the complaint as amended. After hearing, the complaint as amended was dismissed with prejudice, and plaintiffs having elected to stand on the complaint as amended, hereinafter called amended complaint, judgment was entered that plaintiffs take nothing by the action and defendants go hence without day.

The right to maintain this suit rests upon the existence of a cause of action against the defendants Northern and the directors of Edison, in favor of Edison, and upon the neglect and refusal of the corporate body to act for itself. 13 Am. Jur., Corporations, sec. 461, page 506; Murphy v. Candor, 263 Ill. App. 226. The right of action in Edison on which plaintiffs rely is based on the charge that the directors of Edison negligently sacrificed the interests of Edison and negligently permitted the waste and misappropriation of its assets by authorizing the waiver of any right to the refund and the surrender of the Northern common stock for cancellation. Plaintiffs say in their brief, in speaking of the latter transaction, the directors "completely overlooked the substantive corporate interests

of Edison" and they "overlooked the necessity of getting full value in return." There is no charge of fraud, personal benefit or ulterior motive on the part of any Edison director, or that any stockholder of Edison received any advantage or sustained any loss from the acts complained of which was not equally shared in or sustained by plaintiffs and all other shareholders of Edison.

■ No presumption of want or gross inadequacy of consideration arises from the fact that ten of the seventeen directors of Edison were also ten of the eleven directors of Northern. In White v. Stevens, 326 Ill. 528, 533, the court said:

"It has also been repeatedly held that corporations having one or more common directors may contract with each other if the contracts are fair and reasonable. There is no presumption in such case that the contract is unfair or oppressive but the person attacking it must prove its unfairness."

This is especially true in the anomalous case before us where recovery is sought on behalf of the parent or dominant corporation, owning 83.5 per cent of the stock of the subsidiary corporation when the contract sued upon was made, on the ground that the directors of the parent corporation negligently failed to protect its interest. The stock in Northern, if any, owned by the directors common to the two companies is not shown. These directors were elected to each board by Edison and it may be assumed that they were concerned primarily in serving Edison, the company that chose them. Bresnick v. Franklin Capital Corp., 77 A.2d 53 (App. Div. N. J. 1950), aff'd 81 A.2d 6 (N. J. 1951).

■ ■ Whether the allegations of the amended complaint state a cause of action, depends on the construction of the Final Separation Contract in the light

of well pleaded facts in the amended complaint. A copy of the contract is attached to and incorporated in the amended complaint. If any allegations of the complaint are inconsistent with the provisions of the contract, the latter will control. As stated in Price v. Solberg, 269 Ill. 459, 462:

"The contract being made a part of the bill, if any facts alleged in the bill differ from the facts stated in the contract the latter must control. The demurrer will not admit the truth of such inconsistent allegations of the bill. (Greig v. Russell, 115 Ill. 483; Armstrong v. Building Ass'n, 176 id. 298.) The only question in this case is as to the proper construction of this contract."

See also Awotin v. Abrams, 309 Ill. App. 421, 425–6. Moreover, the rule that a motion to strike admits well pleaded facts, does not extend to the conclusions drawn by the pleader. The complaint, in order to stand, must contain sufficient averments of facts to state a cause of action. Stenwall v. Bergstrom, 398 Ill. 377, 383. Or, as said in Katzin v. Nabco Liquidating Co., 323 Ill. App. 286 (First Dist. (Abst.) Gen. No. 42489),

"It is the settled law that a motion to strike is in the nature of a general demurrer and it admits the truth only of facts properly pleaded, as distinguished from conclusions, and every allegation is to be taken most strongly against the pleader. The allegation in question, in our judgment, is a mere conclusion of the pleader. Plaintiffs should have pleaded facts sufficient to make out a prima facie showing that the conclusion of the pleader was warranted."

The latter case was a derivative suit by stockholders of Nabco against the directors of Nabco and a corporation to which assets of Nabco had been sold, seeking rescission of the sale and damages from the directors because, as alleged in the amended complaint, "the sale

price fixed in said contract of sale is at least $10,000,000 less than the fair value of the assets sold thereunder."

The Final Separation Contract is in the form of a letter dated January 26, 1955 from Edison to Northern, confirmed and accepted on the same day by Northern, concluding as follows:

"If the foregoing correctly sets forth our understanding with respect to the above arrangements in contemplation of the final separation of Edison and Northern Gas, please confirm and accept . . . whereupon it shall constitute a binding contract between Edison and Northern Gas . . . , which contract may thereafter be referred to as their 'Final Separation Contract.' "

It thus appears, notwithstanding the allegations of the amended complaint, that the agreements in the separate paragraphs form a single contract, intended by the parties to effect the final separation of Edison and Northern and to divest Edison of all stock ownership in Northern. Plaintiffs do not attack these objectives. As hereinbefore stated, they complain only of the waiver of any right in the refund, and the surrender of the Northern stock for cancellation. They allege that by these transactions "Edison gave to Northern assets, rights and benefits of a value in excess of $5,000,000" and received in return, under the Final Separation Contract, assets, rights and benefits of a net value of less than $50,000. These allegations are mere conclusions of the pleader and not an averment of the fact of gross inadequacy of consideration, unless warranted by the provisions of the contract and the well pleaded facts in the amended complaint consistent with the contract.

With respect to the waiver by Edison of any right to the refund paid to Northern by the pipeline company allocable to purchases by the gas department of Edison during January 1954, no facts are shown by

421

which the loss, if any, to Edison by the waiver can be ascertained. Neither the nature nor the basis of any right of Edison in the refund is shown. The undertaking of Northern to indemnify and hold Edison harmless from any claims by gas customers with respect to or by reason of such allocable portion of the refund, raises an inference that some part, if not all, of the refund may be payable to the gas customers.

In alleging that the surrender and cancellation of the Northern stock was a giveaway of the full market value of the stock—$5,046,560.63, and an unjust enrichment of Northern, plaintiffs misconceive the effect of the transaction. Upon cancellation of the stock, Northern did not have a single dollar more in assets than before. It had 253,915 fewer shares of common stock outstanding, and each outstanding common share represented a slightly larger interest in Northern. Edison, as the owner of 82.5 per cent of the outstanding common stock of Northern after the cancellation of the shares surrendered, received 82.5 per cent of the benefit to Northern stockholders from the transaction —an increase of more than $4,125,000 in the interest represented by 4,982,115 shares of common stock retained by it. The giveaway, if any, by the surrender and cancellation of the stock, considered as a separate transaction, was less than $900,000—the increased interest in Northern represented by the remaining stock outstanding, some of which was held by Edison shareholders or their assigns.

Plaintiffs do not complain of any further loss to Edison under the contract. We therefore assume that the remaining agreements were beneficial, or at least not detrimental, to Edison. The contract and the amended complaint show the receipt by Edison of benefits under paragraph one of the contract in excess of $300,000. By the provisions of this paragraph the parties agreed to file consolidated federal income tax

returns for the year ending December 31, 1954, and for each subsequent year or a portion thereof with respect to which Edison shall be entitled under the Internal Revenue Act to file such income tax returns. The amended complaint shows the various dividends declared and paid by Northern on its common and preferred stock during 1954 and on February 1, 1955, and the number of shares of stock held by Edison on the respective dates of the dividends, from which it appears by computation that Edison during the period stated received dividends from Northern totaling $4,324,014.20, on which Edison would save, in income taxes under a consolidated return, in excess of $300,000.

■ Other possible benefits to Edison from the consolidated income tax returns cannot be evaluated on the record before us. Because of the failure to aver sufficient facts there can be no evaluation of the possible benefits to Edison from the following provisions of the Final Separation Contract: (a) The agreement of the parties to execute and deliver a supplemental agreement to their boiler gas fuel contract; (b) Northern's agreement, at its expense, to prepare and issue such certificates and establish and maintain stockholders' accounts required or occasioned by Edison's distribution of Northern common stock to Edison stockholders after the above-mentioned surrender of Northern common stock for cancellation; (c) Northern's agreement, if Edison should contract to purchase the electric and steam-heating utility at De Kalb, Illinois, to acquire and pay for the steam-heating business and assume full responsibility in connection with the steam-heating properties, franchises and business; (d) Northern's agreement to pay all federal stamp taxes, if any, on account of Northern bonds issued under Edison's indenture, adopted by Northern on February 9, 1954; (e) The agreement to complete the transfer of assets between the Edison and Northern

423

Service Annuity Funds and take other action for the continuance of existing arrangements relating to the transfer of contributions and paid-up life insurance; (f) The agreement to continue mutual participation in certain blanket fire and extended coverage insurance policies—Edison to retain possession and control of the policies; (g) Northern's agreement, at its expense, to render the assistance specified in the contract in connection with Edison's proposed sale of Northern 5 per cent convertible preferred stock. In addition, there are no allegations of fact from which it is possible to evaluate the possible benefits to Edison and its stockholders, including plaintiffs, of the final separation of Edison and Northern and the divesting of Edison of its stock ownership in Northern and the distribution of the Northern stock to Edison stockholders as a tax-free dividend. The burden of alleging and proving the gross inadequacy of consideration on which plaintiffs base their suit is on them. They do not meet this burden by leaving uncertain the net value of the possible benefits to Edison. Their failure to allege facts justifying their conclusion that the "net value of the assets, rights and benefits to Edison under all of said agreements was less than $50,000," is a failure to state a cause of action. The court did not err in sustaining the motions of defendants and entering judgment for them.

Having reached this conclusion it is unnecessary to extend this opinion by a discussion and decision of the question whether plaintiffs had exhausted their remedies within the corporation before instituting suit.

The judgment is affirmed.

Affirmed.

BURKE and FRIEND, JJ., concur.