FREDERICK J. BERTRAM, *et al.*, Plaintiffs-Appellants, *v.* BRANDT W.
BERGER, *et al.*, Defendants-Appellees.

(No. 54030;

First District—September 24, 1971.

Frederick J. Bertram, of Chicago, for appellants.

Berger, Newmark & Fenchel and Carl A. Schoeneberger, all of Chicago, for appellees.

Mr. PRESIDING JUSTICE SMITH delivered the opinion of this court:

Plaintiffs appeal from a judgment order denying their motion for summary judgment and allowing the motion of the defendants for summary judgment and dismissing plaintiffs' cause of action. The suit revolves around the action of St. Pauls House transferring real estate by deed to Grace Convalescent Home and making an outright gift of $100,000 to Grace. Both corporations are Illinois charitable corporations. The basic issues are twofold: (1) Is the action of St. Pauls *ultra vires* and (2) is there a genuine issue of a material fact which precludes summary judgment. No evidence was taken in the trial court and the case was

submitted on the pleadings, respective motions and supporting affidavits. Both questions we answer in the negative and affirm the judgment of the trial court.

Plaintiffs are corporate members of St. Pauls House. The defendant, Berger, as president of St. Pauls House and the defendant, Zurfli, as secretary, executed the quit claim deed conveying a substantial portion of the real estate of St. Pauls House to Grace. Ervin F. Baur is a director of St. Pauls and also a director and president of Grace and as an architect has a contract with Grace for the construction of the buildings and improvements planned by Grace. St. Pauls House, as a corporation, asked and was granted leave to intervene as a party-defendant and filed an answer.

■■ Since 1949, the charter purpose or objective of St. Pauls House is "to provide and operate a churchly home for the aged and to engage in other churchly and charity work (not to include the care of neglected or dependent children". Prior to 1949, its charter read "To provide and operate a churchly home for the aged". The charter purpose of the Grace Convalescent Home is "to provide and operate as a not-for-profit corporation a churchly home for the nursing care of aged and chronically ill persons without discrimination on account of race, creed or color". We turn first to the question of *ultra vires* for if either or both of the actions of St. Pauls in transferring property to Grace is *ultra vires* as a matter of law, we are at the end of our inquiry as to such transaction or transaction and the judgment of the trial court should be reversed as to one or both. At the outset we should make the observation that the *cy pres* doctrine has no application here. That doctrine contemplates that a court will decree that property which can no longer be applied to a specific purpose selected by the donor or donors will be applied instead to some different purpose as near as may be to the one which the donor or donors selected within the scope of their general charitable intent. Here there is no specific purpose of St. Pauls that cannot be carried out and the *cy pres* doctrine is not applicable. (*Holden Hospital Corporation v. Southern Illinois Hospital Corporation*, 22 Ill.2d 150, 174 N.E.2d 793; *Kelly v. Guild*, 42 Ill.App.2d 143, 191 N.E.2d 377.) Moreover, trustees cannot without the aid of a court make the *cy pres* doctrine applicable to an estate in their charge. 14 C.J.S. Charities, § 52, p. 519.

■■ "Assets held for a charitable * * * use * * * shall be transferred or conveyed to one or more domestic or foreign corporations, societies or organizations engaged in activities substantially similar to those of the dissolving or liquidating corporation as the court may direct." (Ill. Rev. Stat. 1967, ch. 32, par. 163a 54.) This applies to a liquidation of such corporate assets by a court and involves a dissolution of the cor-

poration. Thus, where all of the assets are to be disposed of and the corporation dissolved, there is a statutory limitation. What statutory limitations, if any, are there upon the disposal of only a part of the corporate assets of a charitable corporation? It would seem logical that if it is the policy of the law in dissolution to assure that the assets are to be employed in activities "substantially similar" to those of the dissolving corporation, then a like philosophy would apply to a disposition of a part of the assets of such a corporation. It should also be noted that Holden states at p. 161 that "there is no provision for evading this standard by means of a by law".

■■■ Not-for-profit corporations generally have the power "(e) to sell * * * and otherwise dispose of all or any part of its property and assets" and (1) to make donations in furtherance of any of its purposes * * *." (Ill. Rev. Stat. 1967, ch. 32, § 163a 4(e) and (1).) In (n) of the same statute, such corporations are given the power "to have and exercise all powers necessary or convenient to effect any or all of the purposes for which the corporation is organized". It seems to us that it would be a semantical abuse of common sense and plain English to deny that the addition of the words "to engage in other churchly and charity work" was intended to enlarge the scope of the original charter powers. We have some difficulty in restricting the term "aged" to those who are physically well and able-bodied and eliminate from its meaning those who are sick or physically or mentally incapacitated. It would appear clear that the 1949 amendment to the charter powers mandates a liberal rather than restricted interpretation of the word "aged". In Illinois, a convalescent home may be a charitable institution. (*Rubel v. Friend,* 344 Ill.App. 450, 101 N.E.2d 445.) Indeed one of the arguments that the appellants present is that if St. Pauls wants to provide for a convalescence wing to its existing facilities, they may do so and that it is the more appropriate method of accomplishing the purpose of aid to the convalescent aged of St. Pauls. It would therefore seem to be the thrust of the appellants' argument that care for the convalescent aged is not *ultra vires* if done by St. Pauls itself, but is *ultra vires* if attempted through a subsidiary corporate entity.

Just what will be the relationship between St. Pauls and Grace? These uncontradicted facts appear from the record. (1) St. Pauls Home for the aged and Grace Convalescent Home will be connected by an underground passage affording all-weather access from one building to the other for the residents and personnel of both buildings; (2) the by-laws of Grace provide that there shall be fifteen members of its Board of Directors be changed, shall be nominated by the Board of Directors of St. Pauls and two of whom "shall be members of such Board of

Directors"; (3) the proviso in the preceding paragraph "may be changed or amended only with the consent of St. Pauls House Corporation"; (4) that an agreement dated July 20, 1965, between St. Pauls and Grace provided that the real estate should be conveyed by St. Pauls to Grace "upon the express condition that said real estate will be used solely for the erection and operation of a churchly home for the nursing care of aged and chronically ill persons and for no other purpose or purposes whatsoever and (2) that if said real estate is used for any other purpose or purposes, Grace Convalescent Home hereby agrees that the title to said real estate shall revert to and be forfeited to St. Pauls House"; (5) paragraph four of this same contract provides that the covenant for reverter of title shall be taken to be a covenant running with the land in favor of the grantor and that the grantor shall be authorized to enforce in its own right and name, and its successors and assigns, all remedies afforded by law whereby the grantor, its successors and assigns, may enforce said covenants and restrictions or prevent infractions thereof or may recover all lawful damages suffered by it by reason of such infractions; (6) after the filing of this suit in 1969, an agreement was entered into whereby Grace agreed to give "first preference for nursing care to residents of St. Pauls House; and in the event that any time thereafter the nursing home is completely occupied and there are no immediately available beds or rooms available for residents of St. Pauls, it will make available to such residents in St. Pauls nursing house care from Grace Convalescent Home until such time as occupancy can be made available for such residents". It is not disputed but that St. Pauls has had difficulty in placing its residents who become ill in convalescent homes.

■■ It will be noted from the above-connecting links that we have overlapping directorates. In this connection *Nagel v. Northern Ill. Gas Co.*, 12 Ill.App.2d 413, 139 N.E.2d 810, becomes apropo. In that case it is stated "no presumption of want or gross inadequacy of consideration arises from the fact that ten of the seventeen directors of Edison were also ten of the eleven directors of Northern". In *White v. Stevens,* 326 Ill. 528, 533, 158 N.E. 101, 103, the court said:

"It has also been repeatedly held that corporations having one or more common directors may contract with each other if the contracts are fair and reasonable. There is no presumption in such case that the contract is unfair or oppressive but the person attacking it must prove its unfairness."

"These directors were elected to each board by Edison and it may be assumed that they were concerned primarily in serving Edison, the company that chose them. *Bresnick v. Franklin Capital Corp.,* App. Div.

1950, 10 N.J. Super. 234, 77 A.2d 53, affirmed 1951, 7 N.J. 184, 81 A.2d 6."
(*Nagel v. Northern Ill. Gas. Co.*, 12 Ill.App.2d 413, 139 N.E.2d 810.)
From the control and the supervision which is demonstrated by these
facts and these contracts, it would seem that St. Pauls has taken appropri-
ate steps to protect its property and ensure that its assets will not be dis-
sipated. Indeed it would appear to us on the surface arguendo that the
same amount of property and the same $100,000 might appropriately be
expended by St. Pauls in an annex without even the appellants consider-
ing it *ultra vires* or a breach of trust.

■■ Aside from the mere fact that the defendant Baur was at one and
the same time a director in St. Pauls and a president of Grace and
employed by Grace as the architect for the construction of the planned
convalescent home, there is no suggestion in this record of double deal-
ing, unfairness or impropriety. It does not appear that Mr. Baur has
exercised the power and the influence and control over St. Pauls as did
Ryan in *Geddes v. Anaconda Copper Mining Co.*, 254 U.S. 590 or Mr.
Englestein in *Shlensky v. South Parkway Building Corp.*, 19 Ill.2d 268,
166 N.E.2d 793.

Having read with care *Northwestern University v. Wesley Hospital,*
290 Ill. 205, 125 N.E. 13; *Rush Medical College v. University of Chicago,*
312 Ill. 109, 143 N.E. 434; and *Eaton v. Woman's Home Missionary
Society,* 264 Ill. 88, 105 N.E. 746, we believe that the principles stated
in these several cases control in supporting the action of St. Pauls in this
case.

■■ The appellants also suggest that this is not a case for summary
judgment. We would point out that both sides joined in the motion for
summary judgment and that at that time at least both sides felt that
there was no genuine issue of any material fact. While not necessarily
bound forever by the position then taken, it is at least persuasive. There
are issues as to what may be regarded as immaterial facts, but the facts
stated in this opinion are not in dispute and are controlling.

■■ During oral arguments, the court raised the question as to
whether or not the attorney general of this State was an indispensable
or necessary party and requested briefs. The attorney general was invited
to intervene and did not do so. Both parties agree that the attorney gen-
eral is not an indispensable or necessary party under the facts in this
case and we concur.

Other questions raised on the record have been considered and are
without merit. Accordingly, the judgment of the trial court is affirmed.

Judgment affirmed.

CRAVEN and TRAPP, JJ., concur.